DAVIS v. DAVIS et al.

(Circuit Court of Appeals, Fifth Circuit. February 4, 1896.)

No. 431.

**FEDERAL COURTS—FOLLOWING STATE PRACTICE—EQUITABLE DEFENSES.**
Rev. St. § 914, providing that the practice, pleading, etc., in the circuit and district courts in civil causes shall conform as nearly as may be to the practice, pleading. etc., in the state courts, does not authorize the federal courts to disregard the established distinctions between law and equity nor to permit equitable defenses in actions at law, although the state statutes permit such defenses to be made in the state courts.

Appeal from the Circuit Court of the. United States for the Southern District of Mississippi.

W. L. Nugent, for appellant.

E. Mayes, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and BOARMAN, District Judge.

PARDEE, Circuit Judge. The appellant brought his bill in the chancery court of the county of Adams, in the state of Mississippi, against Leander Hargrave, James L. Ligon, the New England Security Mortgage . Company, and others, to establish his equitable title to, and recover possession of, the one undivided half of the Homo Chitto plantation, situate in the said county of Adams, state of Mississippi. The defendants above named removed the cause to the circuit court for the Southern district of Mississippi, on the ground that the suit was one arising under the constitution and laws of the United States. In the circuit court the said defendants interposed a general demurrer to the bill, which, upon hearing, was sustained; and thereupon the appellant appealed to this court, assigning as error the single proposition that the court erred in sustaining the demurrer and in dismissing the bill. The bill, besides setting out with great particularity the complainant's equitable title and the history of his case, especially charged as follows:

"That on the 12th day of March, A. D. 1889, said S. B. Newman, Jr., instituted against your complainant, in the circuit court of said Adams county, an action of ejectment to recover possession of the whole of said lands, and your complainant filed a plea therein defending for the one undivided half part of said lands; and on the trial of said cause, your complainant having been permitted, under the law of this state, to introduce his equitable defenses, the plaintiff, said S. B. Newman, Jr., suffered a nonsuit. That subsequently said S. B. Newman, Jr., instituted an action of ejectment, for the whole of said lands, 'against your complainant, in the United States circuit court for the Southern district of Mississippi, wherein he prevailed, under the decisions of the supreme court of the United States and the rigid distinctions between law and equity jurisdictions, and wherein the trial of the issue in ejectment is confined to the strict legal title, and equitable defenses are not admissible. Your complainant filed a plea to said action, defending for the one undivided half part of said lands, and on the trial offered to make his equitable defenses; but these were excluded by the court, and said Newman, Jr., recovered possession of said half part of said plantation on the

legal title conveyed to him as aforesaid by said trustee. That the only question tried and decided in said action was as to the legal title between said S. B. Newman, Jr., and your complainant, and no equitable questions were or could have been considered in said action, and said Newman obtained judgment."

The question presented under the assignment of error appears to be this: The practice act of the state of Mississippi permits equitable defenses to be made to actions at law, and in ejectment permits a recovery upon an equitable title; and section 914 of the Revised Statutes of the United States provides that "the practice, pleadings and forms and modes of proceeding in civil causes, other than equity and admiralty causes in circuit and district courts, shall conform as near as may be to the practice, pleadings, forms and mode of proceeding existing at the time in like causes in the court of record of the state within which circuit and district courts are held." Therefore, in the circuit court of the United States for the Southern district of Mississippi, the appellant, when sued in ejectment, to recover the lands in controversy, was entitled to set up any equitable title he had to defeat the action; and that the ruling of the court in such action, denying him the right to plead and prove his equitable title, was, at most, a mere error of the law judge, in the exercise of his law jurisdiction, which could only have been remedied by writ of error, and cannot now be remedied by a bill in chancery.

The learned counsel for the appellees admits the general common-law rule that cognizance of equitable titles cannot be had in actions of ejectment, and admits that such rule, under ordinary circumstances, ought to be, and will be, applied in federal courts. He says:

"But, after all, there is no such thing as a universal system of common law, applicable to the entire United States. The common law, as enforced in the several states, by the federal courts therein, is enforced as the law of the states in which the courts are held. The cases relied upon by counsel, and the other cases to the same effect, not cited by him (of which there are several), are unquestionably sound law. But our proposition is, and this is also indubitably true, that not a single one of those cases was decided in a state in which, in the common-law courts of that state, a different practice obtained at the time, which practice was by section 914 of the Revised Statutes of the United States (being the act of 1872) adopted. Now, the bill in this case admits that, in Mississippi, an equitable title could be offered in an action of ejectment in the common-law courts, as a good defense. Section 914 of the Revised Statutes of the United States, we claim, therefore, produces this result: That by virtue of an act of congress, in such case made, that practice is, as to this state, and every other state in which a similar practice obtains. adopted, not as common-law practice, but, as to the federal courts, a statutory practice; and that question has not been raised in any of the cases cited by counsel, or in any of the cases in which the supreme court of the United States has decided that equitable titles cannot be passed on in ejectment suits."

As cases in which the supreme court of the United States has recognized the principle for which the learned counsel contends, he cites Morgan v. Eggers, 127 U. S. 63, 8 Sup. Ct. 1041; Sears v. Eastburn, 10 How. 187; Lamaster v. Keeler, 123 U. S. 376, 8 Sup. Ct. 197. In Morgan v. Eggers, a local statute, to the effect that, in an action of ejectment, the plaintiffs were entitled to recover against the defendants, or either of them, the whole of the premises in controversy,

or any part thereof, or any interest therein, according to the rights of parties, was recognized as applicable in the circuit court of the United States for the district of Indiana. In Sears v. Eastburn, supra, the practice act of Alabama, abolishing fictitious proceedings in ejectment, and substituting in their place the action of trespass, for the purpose of trying title to lands, and recovering their possession, was held applicable in the circuit court for the district of Alabama. In Lamaster v. Keeler, supra, it was held that, under proper construction of sections 914, 916, Rev. St. U. S., a Nebraska statute respecting stay of executions and orders of sale did not govern proceedings after judgment in the circuit courts of the United States sitting in Nebraska. In none of these cases do we find that the generally recognized distinction between law and equity is at all affected by the practice acts of any of the states.

In Bagnell v. Broderick, 13 Pet. 436, which was an action of ejectment, in which it was sought to set up equitable titles, the supreme court said:

"The equity side of the circuit court is the proper forum, and a bill the proper remedy, to investigate the equities of the parties."

And that has been the rule, many times recognized, so that, in Foster v. Mora, 98 U. S. 425, 428, the court declared, not deeming it necessary to cite authorities:

"In actions of ejectment, in the United States courts, the strict legal title prevails. If there are equities which would show the right to be in another, these can only be considered on the equity side of the federal courts."

And see Langdon v. Sherwood, 124 U. S. 74, 85, 8 Sup. Ct. 429.

It is unnecessary to multiply authorities, for counsel for appellees admits the general rule, but claims that the decisions of the supreme court declaring it have not been rendered since section 914 was adopted (1872) in any case arising in any state in which, in the common-law courts of that state, a different practice obtained at the time. The argument is that Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, and Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977, are only to the effect that, when it is a question of jurisdiction on the chancery side of the federal courts, the courts are sedulous in observing a distinction between common law and equity, for the reason that the act of congress declares, in express terms, that the United States courts sitting in equity shall have jurisdiction in those cases only in which there is no plain, complete, and adequate remedy at law; and that, on the other hand, congress itself, by the act of 1872, has declared a different rule in respect to common-law jurisdiction, and, just so clearly as federal legislation has restricted the equity jurisdiction of the federal courts, has it, on the other hand, enlarged, by a plastic and variable rule, the common-law practice, so as to conform to the local practice in those courts exercising common-law powers.

Without discussing the points decided in Scott v. Neely and Cates v. Allen, we are of opinion the matter has been conclusively settled by the supreme court in Scott v. Armstrong, 146 U. S. 499, 512, 13 Sup. Ct. 148, where the question as to whether a circuit court of the United States (sitting as a court of law in a state where, by the

practice act of the state, all distinctions between actions at law and
suits in equity were abolished, and all defenses, counterclaims, and
set-offs, whether formally known as legal or equitable, were per-
mitted) had jurisdiction to entertain an equitable defense was square-
ly presented, and the court said:

"Section 914 of the Revised Statutes, in providing that the practice, plead-
ing, and forms and modes of proceeding in civil causes, in the circuit and dis-
trict courts, shall conform as near as may be to the practice, pleadings, and
forms and modes of proceeding existing at the time in like causes in the
courts of record of the state within which such circuit or district courts are
held, in terms excludes equity causes therefrom; and the jurisprudence of the
United States has always recognized the distinction between law and equity
as, under the constitution, matter of substance, as well as of form and pro-
cedure. And, accordingly, legal and equitable claims cannot be blended to-
gether in one suit in the circuit courts of the United States, nor are equitable
defenses permitted. Bennett v. Butterworth, 11 How. 669; Thompson v. Rail-
road Co., 6 Wall. 134; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712; Montejo
v. Owen, 14 Blatchf. 324, Fed. Cas. No. 9,722; La Mothe Manuf'g Co. v.
National Tube Works Co., 15 Blatchf. 432, Fed. Cas. No. 8,033. We are of
opinion that the circuit court had no power to grant the set-off in question in
the suit at law."

Later, in Lindsay v. Bank, 156 U. S. 485, 493, 15 Sup. Ct. 472, in
dealing with the practice on the law side of the United States court,
sitting in Louisiana, the court said:

"The case is thus brought within the rule, which this court has so often
had occasion to lay down, that the remedies in the courts of the United States
are, at common law or in equity, not according to the practice of state courts,
but according to the principles of common law and equity, as distinguished and
defined in that country from which we derive our knowledge of these princi-
ples; and that, although the forms of proceedings and practice in the state
courts shall have been adopted in the circuit courts of the United States,
yet the adoption of the state practice must not be understood as confounding
the principles of law and equity, nor as authorizing legal and equitable claims
to be blended together in one suit. Bennett v. Butterworth, 11 How. 669, 674;
Thompson v. Railroad Co., 6 Wall. 134; Broderick's Will Case, 21 Wall. 503,
520. It is true that the cases in which such strictures have been expressed
have been usually those in which resort has been had to equitable forms of re-
lief instead of legal remedies, and when defendants have thus been deprived
of the constitutional right of trial by jury; but so long as we attach im-
portance to regular forms of procedure, we cannot sustain so plain an attempt
as is here presented to substitute the machinery of a court of law, in which
the facts are found by the jury, and the law prescribed by the judge, for the
usual and legitimate practice of a court of chancery."

As to the right of the complainant to appeal to equity to recognize
a meritorious, equitable title, after judgment at law, see North
Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co., 152 U. S. 615, 14
Sup. Ct. 710, where it is said:

"Again, it is well established that equity will entertain jurisdiction, and
afford relief against the collection of a judgment, where, in justice and good
conscience, it ought not to be enforced, as where there is a meritorious
equitable defense thereto, which could not have been set up at law, or which
the party was, without fault or negligence, prevented from interposing. Illus-
trations of these general principles are found in the cases of Leeds v. In-
surance Co., 6 Wheat. 565; Scammon v. Kimball, 92 U. S. 362; Crim v. Han-
dley, 94 U. S. 652; Embry v. Palmer, 107 U. S. 3, 2 Sup. Ct. 25; Knox Co. v.
Harshman, 133 U. S. 152, 10 Sup. Ct. 257; Marshal v. Holmes, 141 U. S. 589,
12 Sup. Ct. 62."

We are clear that the circuit court erred in sustaining the general demurrer to the bill, and therefore the decree appealed from is reversed, and the cause is remanded, with instructions to overrule the demurrer, and thereafter proceed as equity may require.