### COOK et al. v. FOLEY et al.*

(Circuit Court of Appeals, Eighth Circuit. February 13, 1907.)

#### No. 2,224.

**1. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.**

While it is the rule of the federal courts that if there be error apparent on the face of the record a presumption of prejudice arises which cannot be disregarded unless the record affirmatively discloses that the error was not prejudicial, it is equally well established in such courts that no judgment will be reversed for error when it is clear that such error did not and could not have prejudiced the rights of the party against whom the ruling was made.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 4029–4037.]

**2. CONTRACTS—RULES OF CONSTRUCTION.**

It is a well-recognized canon of construction that the situation of the parties to a contract at the time it was entered into should be considered.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 752.]

**3. SAME—PRACTICAL CONSTRUCTION BY PARTIES.**

Where the parties to an executory contract have given it a particular construction, such construction will generally be adopted by the court in giving effect to its provisions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 753.

Practical construction of contracts by parties, see note to Davis v. Alpha Portland Cement Co., 73 C. C. A. 392.]

**4. SAME.**

Defendants took the contract to construct a railroad in accordance with specifications which by their terms were made a part thereof, and which provided, inter alia, for monthly payments based on approximate estimates made by the engineers of the railroad company, a certain percentage being reserved, and for a final estimate and payment after the work was completed. They also provided that "the engineers' measurements and classifications shall be final and conclusive." Plaintiffs submitted to defendants a proposal for a subcontract after having been given a copy of such specifications, which proposal stated "all work to be done according to the specifications of the * * * railroad company and to the satisfaction of their engineers." The proposal was accepted, and

---

*Rehearing denied May 23, 1907.

plaintiffs did the work. They received monthly payments on estimates made by the company's engineers, and on completion of the work received final payment on measurements and classifications so made without objection. They at no time had measurements or classifications made for themselves until a year after such final payment. *Held*, that while the provision of the specifications making the measurements and classifications of the company's engineers final and conclusive was not in terms made a part of the subcontract, yet in view of the situation of the parties when it was made, and their acts in making and receiving payments based solely on the estimates, measurements, and classification of such engineers, it was clearly intended that the specifications should be a part thereof, and that the rights of the parties thereto were governed by such provision.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 884-889.]

5. SAME—PROVISION FOR ESTIMATES BY ENGINEERS—CONCLUSIVENESS OF ESTIMATES.

Final measurements and classification of work made by engineers under a contract providing that they shall be final and conclusive between the parties are in legal effect an award made by arbitrators, and are final and conclusive, in the absence of fraud or such gross mistakes as imply bad faith or a failure to exercise an honest judgment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 1326-1351.]

6. SAME—IMPEACHMENT FOR FRAUD OR MISTAKE.

Final estimates made by engineers in pursuance of a contract between the parties making such estimates final and conclusive when made the foundation of an action at law, or when interposed as a defense to an action at law, cannot be impeached for fraud, such gross mistakes as imply bad faith, or a failure to exercise an honest judgment on the part of the engineers if timely objection is made, but for such relief resort must be had to a court of equity.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 1343.]

7. COURTS—PROCEDURE IN FEDERAL COURTS—MINGLING OF LEGAL AND EQUITABLE CAUSES OR DEFENSES.

In the federal courts there can be no blending of legal and equitable causes of action or defenses.

8. SAME—ISSUES—OBJECTIONS—WAIVER.

The objection that an issue raised by the pleadings in an action at law is cognizable in equity is waived by a failure to interpose it in apt time in the trial court.

9. CONTRACTS—ESTIMATES OF RAILROAD WORK BY ENGINEER—IMPEACHMENT FOR FRAUD.

A very high degree of proof is required to impeach the decision of a railroad engineer as to amount and classification of the work done by a contractor on the ground of fraud or bad faith, where by the contract such decision is made conclusive between the parties.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 1347.]

Carland, District Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Minnesota.

H. V. Mercer (George P. Wilson and George C. Greene, on the brief), for plaintiffs in error.

Harris Richardson, for defendants in error.

Before VAN DEVANTER, Circuit Judge, and CARLAND and POLLOCK, District Judges.

POLLOCK, District Judge. The important and controlling facts in this case, as gleaned from the record, are:

Defendants in error (hereinafter called "defendants") were the original contractors with the Algoma Central Railway Company (hereinafter called the "railway company") for the grading of a line of road in Canada. On the 30th day of September, 1901, the defendants received from plaintiffs in error (hereinafter called "plaintiffs"), the following proposition to grade a portion of the road.

"St. Paul, Sept. 30, 1901.

"Messrs. Foley Bros., Porters & Whalen, Contractors.

"Gentlemen: We propose to do all the work on the Main Line near Batchewana of the Algoma Central Ry. from Station 885 to Station 1065 at the following prices:

| | |
|---|---:|
| Earth excavation, hauled 500 feet and under, per cu. yd. | $ 25 |
| Loose rock excavation, hauled 500 feet and under, per cu. yd. | 40 |
| Solid rock excavation, hauled 500 feet and under, per cu. yd. | 1 45 |
| Hard pan excavation, hauled 500 feet and under, per cu. yd. | 40 |
| Material hauled beyond 500 feet | 01 |
| Clearing per acre | 38 00 |
| Close cutting per acre | 35 00 |
| Grubbing per acre | 75 00 |

Cedar Box Culverts, $16.00 per M. ft. B. M.

"All work to be done according to the specifications of the Algoma Central Railway Company and to the satisfaction of their engineers, and to be completed by June 30, 1902. If, at any time in your opinion, or that of the engineers of the Algoma Central Ry. Co. there is not sufficient force on the work to complete the same within the time specified, we agree that you may put on what force you consider necessary and charge same to our account.

"Yours truly,                    Cook Bros."

To this proposition defendants replied:

"Messrs. Cook Bros., Contractors:

"Gentlemen: We accept the above proposition and authorize you to commence at once.

"Yours truly,          Foley Bros., Porters & Whalen,
                                "By W. D. Barclay."

In accordance with the contract so made, plaintiffs did perform the work of grading the road between the sections named in the contract, and before the commencement of this action received therefor the sum of $70,639.74 for work done by them under the contract, based on estimates made by the engineers of the railway company. Plaintiffs also received the further sum of $8,542.30 for extra labor performed, materials furnished, and money expended for various purposes. Thereafter plaintiffs commenced this action at law to recover a balance of $21,965.78 claimed by them to be due on the contract price for work done under the terms of the contract, and the further sum of $3,206.52 as balance claimed by them to be due for extra work done, materials and money furnished and expended for defendants. The amount thus claimed by plaintiffs for work done in pursuance of the contract was based upon measurements and classifications of the work made by engineers, at their request, more than a year after the completion of their contract.

The petition is in three counts. The first, for balance due under the terms of the contract; second, for the same amount based upon

the common (quantum meruit) count; third, for balance claimed for extras furnished, extra work done, materials furnished, and money expended for the benefit of defendants. To this petition defendants answered, admitting the making of a contract with plaintiffs and the performance of the work and labor by plaintiffs under the contract, but alleged at the time of the making of the contract there was in existence certain specifications for the doing of the work which formed a part of the original contract between defendants and the railway company, and that by reference thereto in the contract made with plaintiffs said specifications were adopted and became a part of the subcontract between plaintiffs and defendants. These specifications were set out in the answer in full.

Paragraph 4 of the general provisions applicable to all work done under the specifications provides as follows:

"An approximate estimate will be made at the end of every month during the current month as provided for in the contract, reserving to the contractor the right to inquire into the correctness of the estimate. 15 per cent. of the monthly estimates will be reserved as a reserve fund until final completion of the work as provided for in the contract."

Paragraph 5 provides:

"Final estimates will be made for the work with reasonable diligence when completely performed, and the engineer reserves the right to reject the whole or any portion of the said work, should it be found to be inconsistent with the specifications. The engineer's measurements and classifications shall be final and conclusive."

Paragraph 19 provides:

"These specifications are hereby acknowledged, accepted and made a part of this contract."

The answer further alleged that the engineers of the railway company made a final estimate of the amount of work done by plaintiffs under the terms of their contract and its classification, and in accordance therewith defendants had made full payment to plaintiffs according to the terms of the contract.

As to the third count in plaintiffs' petition, the defendants in their answer pleaded full payment. In reply to this answer plaintiffs pleaded as follows: In the third paragraph admitted the railway company provided specifications substantially as set out by the defendants. In the second paragraph denied these specifications were a part of the contract made by plaintiffs with the defendants, and in the fourth and fifth paragraphs of the reply pleaded as follows:

"Denies that either the said engineer or engineers ever either made, or caused to be made measurements of the said work according to the methods and at the times alleged in said answer, or at all; denies that either the said engineer or engineers ever made any estimates of said work except approximate estimates and measurements occasionally made of parts of said work, and alleges that said occasional and approximate estimates and measurements were not made every month or as often as every month, and were never made for the whole of said work, and not made after said work was completed; that neither of the plaintiffs ever had any notice or knowledge of either the time or place of either any estimate or measurement of said work, either approximate, preliminary or final, or otherwise, by either the said engineer or engineers; that neither of the plaintiffs were ever either present

or represented at such estimate or measurement; that neither of them ever had any opportunity to inquire into the correctness of any such estimate, or measurement, or know whether it was made either fairly or correctly; that the plaintiffs were informed that said approximate and occasional estimates and measurements had been made of parts of said work from time to time, and requested and demanded of the said defendants, and the said engineer and engineers in charge of said work and railway company, that plaintiffs be permitted to have the right to examine such estimates as might be made by said engineer or engineers, and might have copies thereof; that said request was always refused to either examine or see either or any such reports or estimates; that plaintiffs are informed and believe, and upon that information and belief further allege, that, when said approximate and occasional estimates and measurements were made, they were for much less than the work actually performed, and were greatly erroneous as to the classifications; that after the work had been actually performed and said occasional measurements had been made, in so far as they were made, the result of said measurements and the classifications thereon and the estimates based upon said measurements and classifications were, from time to time, by the procurement of the said defendants, willfully and fraudulently manipulated and changed to decrease the apparent amount of work performed by these plaintiffs, and with a view and with a purpose and with the intention of so combining, manipulating, and changing the results of said estimates as to greatly reduce the amount of said work, and to falsely and erroneously classify the same so as to greatly reduce the amount owing from said defendants to these plaintiffs.

"And plaintiffs further allege that within and at a reasonable time after the conclusion of said work plaintiffs duly demanded of said engineers and said defendants that they measure or cause to be measured the said work for a final estimate thereof, and offered to pay one-half of the expense of such measurements, but said defendants refused to do so; deny that said engineer ever either measured or classified said work, either in accordance with the allegations of said answer, or at all; but allege that if said engineer ever either measured or attempted to measure, or ever either classified or attempted to classify, said work, or ever either found, or attempted to find, adjudge, or determine the same, or the rights of these plaintiffs, or the liability of the defendants therefor, that the same was done without either the knowledge or consent of plaintiffs, and without any agreement upon the part of plaintiffs therefor, and without any hearing or opportunity given to plaintiffs to be heard thereon; that such measurements and classifications or attempted measurements and classifications, if made or attempted to be made by said engineer, were wholly without authority as to these plaintiffs, and of no binding force or effect on them or their rights therein; that if the said engineer did make in fact such measurements, and did in fact attempt to classify said work and adjudge said work, that he could not, and did not, arrive at the amounts and classifications set forth in defendants' answer, if the same were done intelligently and honestly, and that if he did arrive at the said respective amounts and classifications, that his said measurements and classifications and each of them, in so far as they differ from the respective amounts set forth in the complaint herein, were, and are, incorrect and false, and wholly erroneous, and made so with the knowledge and consent and under the direction of the said defendants."

At the beginning of the trial on motion made by defendants' counsel to require the plaintiffs to elect whether they would proceed on the contract as set out in the first cause of action, or on the common count, as set forth in the second, the court ruled the plaintiffs to proceed on its first cause of action based on the contract; and further ruled, on the face of the pleadings as presented, the general provisions of the specifications applicable to all work done under them, making the engineers' measurements and classifications of the work done final and conclusive between the parties, did not form a part of the contract and was not binding upon plaintiffs.

At the conclusion of plaintiffs' testimony the court denied a motion for peremptory instruction in favor of defendants, and held the question of the amount due plaintiffs, in addition to that which it was admitted they had received, to be open for the determination of the jury.

Among other things, the trial court charged the jury with reference to the weight to be given to the measurements and classifications made by the engineers of the railway company, as follows:

"Now, it is for you, gentlemen of the jury, to determine in the case what the amount of these different materials was, and what the different classifications were. If you are satisfied that this work of measurement and of classification was honestly performed by these engineers, Mr. Anderson and Mr. Connell, and by Mr. Garden as far as he acted in the matter; that it was honestly performed by them, and they appear to have no interest in the matter; then it follows that they had better opportunities to ascertain the exact amount, not only of the entire amount of material that was removed, but of the different classifications of this material, than the engineers who went there afterwards, a year or more later, and had not the conformation of the ground to view, had nothing but the places from which the material was taken, frequently, and generally perhaps, not showing what the original surface of the ground was, or how high it might extend, except in some cases on the highest side of the cut; if you are satisfied that these men did this work honestly, it is quite apparent that they had a better opportunity to reach correct conclusions than could have been the case with the engineers who went on there afterwards at the instance of the plaintiffs; and, if you should come to that conclusion, it would substantially end the case.

"But if there is anything in the evidence which satisfies the jury that these measurements or classifications were not made honestly by the engineers of the railroad company, according to which Foley Bros. were paid, as well as the Cook Bros., then it will be for the jury to ascertain what the amount of the material really was, and its proper classification.

"In that case you have the testimony of the two engineers who made the latter measurements, the testimony of Mr. Spaulding, and the testimony of Mr. Bellamy. You have heard what they did. They went there after the work was all done; you have heard what measurements they took, and how they were taken; how that work was done by them; and if upon the whole evidence you are satisfied that the measurements were not made honestly by the engineers of the railroad company, and that thereby the plaintiffs were not paid fully such an amount as they ought to have been paid—if you are satisfied of that from the testimony—then it will be your duty to determine the facts and render a verdict for the plaintiffs for the balance which they ought to have."

It appears from the uncontradicted evidence found in the record the engineers of the railway company made measurements and classifications of the work done by plaintiffs under their contract, and that plaintiffs were paid and received payment for work done by them based on such estimates. It further appears the plaintiffs made no measurements and classifications of the work done by them as the work progressed, and caused none to be made until more than a year after their contract was completed. There is no evidence found in the record tending in the slightest degree to impeach the estimates made by the engineers of the railway company for fraud, nor is there any evidence found in the record tending to show such gross mistakes on the part of the engineers of the railway company in the making of their estimates as would imply bad faith or a failure to exercise an honest judgment on their part. The utmost that may be said of the evidence is, a dispute was raised as to the accuracy of the measurements

and classifications of the engineers as shown from their estimates. As to the third count, there was no sufficient evidence offered by plaintiffs to permit a recovery thereon. The trial resulted in a verdict and judgment for the defendants. Plaintiffs bring error.

In the view we have taken of this case, derived from a reading of the entire record and the briefs of counsel, we deem a separate consideration of the many errors assigned unnecessary. All of substantial merit are so related that a reference to and decision of one ground of error relied upon will show all to be untenable. As seen from the above statement, the trial court at the outset of the trial, on the face of the pleadings, tentatively ruled that provision of the specifications for the doing of the work furnished by the railway company, which formed a part of the contract between the railway company and defendants, and which made the measurements and classifications of the work done, as shown by the estimates of the engineers of the railway company, final and conclusive between it and the defendants, formed no part of the contract between the parties to this litigation. And, although, as clearly appears from the record, the parties proceeded to the trial of the case on all the issues joined as though this question had not been raised or decided, the court seems to have entertained this view of the contract throughout the trial, for while it does not appear from the record how the question was raised, or what called forth the ruling at the time it was made, the trial court in the charge to the jury, among other things, states he had so ruled and expresses satisfaction with the correctness of such ruling. Proceeding further on the assumption of the correctness of the ruling made in this respect, that plaintiffs were not bound or concluded by the measurements and classifications of the work done by them, as shown by the estimates of the engineers of the railway company, but that the true amount of the measurements and classification of their work was open for the determination of the jury as a basis for its verdict, on all the evidence, the court charged the jury as to the weight to be given such estimates, as above quoted from the charge given. If the trial proceeded from a correct view of the plaintiff's contract, this portion of the charge was erroneous, for that it accorded to the testimony of the engineers of the railway company and the estimates made by them of the work done by plaintiffs undue probative force and weight. In effect it charged the jury, if the estimates were honestly made by the engineers of the railway company, as shown by their testimony, that ended plaintiffs' case. In other words, it made the accuracy of the estimates of measurements and classifications of the engineers of no moment, but their honesty the sole test. However, it is the insistence of counsel for defendants that the arbitration clause found in the specifications furnished by the railway company does form a part of plaintiffs' contract, and by reason thereof the estimates made by the engineers of the railway company of measurements and classifications of the work done by plaintiffs for defendants are final, conclusive, and binding upon plaintiffs, as a matter of law, until set aside and annulled for fraud or such gross mistakes on the part of the engineers making them as would imply bad faith on their part, and as there is no testimony found in the record tending to impeach the validity of the estimates made, and as the

verdict and judgment is for defendants, and is right as a matter of law, the error committed, if any, in the giving of this portion of the charge is immaterial.

In view of this contention it becomes material to a decision of the case to inquire whether upon the whole record, as a matter of law, the trial court rightfully held the arbitration clause formed no part of the contract of plaintiffs, not for the purpose of reviewing or correcting the ruling so made in this respect, for, as the defendants had judgment in their favor, it is manifest this may not be done here on this record. Guarantee Co. of North America v. Phenix Ins. Co., 124 Fed. 170, 59 C. C. A. 376, and cases cited. Yet, as the judgment below was for the defendants, if on the whole record such arbitration clause was, as a matter of law, a part of plaintiffs' contract, and it be true, as stated, such estimates of measurements and classifications of the work done by plaintiffs under their contract as are provided by the specifications were in fact made by the engineers of the railway company, and payment was made by defendants to plaintiffs in accordance with such estimates, and the record contains no evidence tending to impeach and avoid such estimates upon any ground for which they might be avoided, it then follows, of necessity, the judgment below is right and must be affirmed, because at another trial no other judgment than that complained of could rightfully be entered. Therefore the error committed in the charge given is without prejudice.

While it is the rule of the federal courts, if there be error apparent on the face of the record, a presumption of prejudice arises which cannot be disregarded unless the record affirmatively discloses the error was not prejudicial (Mexia v. Oliver, 148 U. S. 664, 13 Sup. Ct. 754, 37 L. Ed. 602; Vicksburg & Meridian Railroad v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 172, 30 L. Ed. 299), yet it is equally as well established by the decisions of the federal courts that no judgment will be reversed for error when it is clear such error did not prejudice and could not have prejudiced the rights of the party against whom the ruling was made. (Lancaster v. Collins, 115 U. S. 222, 6 Sup. Ct. 33, 29 L. Ed. 373; Smith v. Shoemaker, 17 Wall. 630, 21 L. Ed. 717; Decatur Bank v. St. Louis Bank, 21 Wall. 294, 22 L. Ed. 560; Railroad Co. v. Pratt, 22 Wall. 123, 22 L. Ed. 827; North v. McDonald, 1 Biss. 57, Fed. Cas. No. 10,312).

Was the view taken by the trial court of the contract existing between plaintiffs and defendants the correct one? The determination of this question depends upon whether or not those provisions of the specifications of the railway company making the admeasurements and classifications of the engineers of the railway company final and conclusive as to the work done under the specifications became a part of the contract between plaintiffs and defendants. The express language of the contract is, "all work to be done according to the specifications of the Algoma Central Railway Company and to the satisfaction of their engineers." From this language it is manifest plaintiffs must have advised themselves as to what the requirements of the specifications were as to the manner of performing the work to be done under their contract, and at least to this extent the specifications were made a part of their contract. The precise question, however,

is, did plaintiffs, by this reference to the specifications of the railway company made in their contract, adopt the provisions made therein for the admeasurement and classification of the work to be done by them? Having in mind only the language employed in the proposition submitted by plaintiffs and its acceptance by defendants, it is not entirely certain whether it includes the arbitration clause of the specifications, making the measurements and classifications of the 'engineers of the railway company final, conclusive, and binding upon plaintiffs as to the work agreed to be done by them under their contract. Woodruff et al. v. Hough et al., 91 U. S. 596, 23 L. Ed. 332. But a due regard for the established rules for the construction of executory contracts, in the light of the undisputed facts found in the record, leaves no room for doubt as to its true construction in this case, for the following reasons:

It is a well-recognized canon of construction that the situation of the parties to the contract at the time it was entered into should be considered, as was said by Judge Sanborn in Rockefeller v. Merritt, 76 Fed. 909, 22 C. C. A. 608, 35 L. R. A. 633:

"One of the most satisfactory tests to ascertain the true meaning of a contract is made by putting ourselves in the place of the contracting parties when it was made, and then considering, in view of all the facts and circumstances surrounding them at the time of its execution, what the parties intend by the terms of their agreement. When their intention is thus made clear, it must prevail in the interpretation of the instrument, regardless of inapt expressions or careless recitals." Accumulator Co. v. Dubuque St. Ry. Co., 12 C. C. A. 37, 64 Fed. 70; United States v. Gibbons, 109 U. S. 200, 3 Sup. Ct. 117, 27 L. Ed. 906; Rock Island Ry. v. Rio Grande Ry., 143 U. S. 596, 12 Sup. Ct. 479, 36 L. Ed. 277.

Applying this rule to the facts shown by the record, what was the situation of the parties at the time this contract was made? The defendants were under contract with the railway company to perform the work here subcontracted to be done by plaintiffs. The specifications referred to in the contract under consideration formed a part of that contract. These specifications were submitted to and in the possession of plaintiffs before they made the proposition to contract with defendants. By the express terms of their contract plaintiffs agreed to do their work in accordance with these specifications. The specifications referred to were one paper, and an entirety, and contained general provisions applicable to all work done under the specifications, and under them is found the provisions for measurements and classification of the work by the engineers of the railway company. Hence plaintiffs knew they must examine the specifications in order to determine the manner of doing the work. Having examined them, they knew the defendants were bound by the measurements and classifications of the engineers of the railway company, and that the railway company would pay the defendants for the work done by plaintiffs only in accordance with the measurements and classifications of the engineers of the railway company, and they had no reason to suspect or believe that defendants were binding themselves to pay the plaintiffs for work done in accordance with different measurements or classifications than those made by the engineers of the railway company.

152 F.—4

Again, there is another well-recognized and perfectly just rule of construction of executory contracts, which is:

"Where the parties to a contract have given it a particular construction, such construction will generally be adopted by the court in giving effect to its provisions." 9 Cyc., subject "Contracts," p. 588.

As said by Judge Thayer in Central Trust Co. of New York v. Wabash, St. L. & P. Ry. Co. (C. C.) 34 Fed. 254:

"The agreement being executory, the practical construction adopted by the parties thereto, and by their successors, during a period of several years, is entitled to great, if not controlling, influence in determining what is the proper interpretation of the same, as was held in Topliff v. Topliff, 122 U. S. 121, 7 Sup. Ct. 1057, 30 L. Ed. 1110, and Chicago v. Sheldon, 9 Wall, 54, 19 L. Ed. 594. It is well understood that the practical construction of a contract adopted by the parties thereto will not control or override language that is so plain as to admit of no controversy as to its meaning. In all such cases the intent of the parties must be determined by the language employed rather than by their acts; but if the language employed is of doubtful import, or if the contract contains no provisions on a given point, or if it fails to define with certainty the duties of the parties with respect to a particular matter or in a given emergency, then beyond all question it is proper to consider how the parties have construed the instrument with respect to such debatable points. If both parties to an agreement for a considerable period, and while free to act, treat a contract as imposing certain duties or obligations, such conduct ought to settle the construction of the instrument if its provisions with reference to such matters are to any extent uncertain, obscure, or incomplete. 'A construction of a contract adopted and acted upon by both parties will be regarded as worked into the contract,' if such construction does not conflict with its express provisions. The manner in which a construction of a contract adopted and acted upon by both parties may, so to speak, be worked into a contract, is well illustrated in Topliff v. Topliff, above cited, and also in the case of Robinson v. U. S., 13 Wall. 363, 20 L. Ed. 653. In the latter case Robinson had contracted to deliver a certain quantity of barley, but whether the delivery should be made in bulk or in sacks was not specified. For a period of six months the barley was delivered in sacks. The court refers to this fact as a proper reason for construing the contract as requiring a delivery in sacks, rather than in bulk. It will rarely be found, we apprehend, that a court will go far astray in arriving at the actual intent of the parties to a contract (which, after all, is the purpose of all rules of construction) by adopting that interpretation which the parties, without compulsion, have themselves adopted and acted upon."

To like effect, see Merriam v. U. S., 107 U. S. 437, 2 Sup. Ct. 536, 27 L. Ed. 531; Uinta Tunnel, Min. & Transp. Co. v. Ajax Gold Min. Co., 141 Fed. 563, 73 C. C. A. 35; District of Columbia v. Gallaher, 124 U. S. 505, 8 Sup. Ct. 585, 31 L. Ed. 526; Michigan Home Colony Co. v. Tabor, 141 Fed. 332, 72 C. C. A. 480; and the many cases cited in 9 Cyc., subject "Contracts," p. 589.

What was the conduct of the plaintiffs during the time this work was being performed by them? As shown by the record, they employed no engineers to measure or classify the work done by them under this contract, and made no such measurements or classifications of the work themselves. The engineers of the railway company were present on the work, and did make such measurements and classifications as the work progressed. Plaintiffs received part payments for work done by them as the work advanced, based alone on estimates made by the engineers of the railway company. And after the completion of their work called for a final estimate of the work done

by them and received payment, not in a round sum, but in odd dollars and cents, based on such final estimates, as made by the engineers of the railway company, and not until more than a year after the completion of their work, and after receiving payment based on the final estimate of the engineers of the railway company, without protest, did they take any steps to make an independent measurement and classification of the work done by them.

The entire record considered, we are of the opinion, even if it might be said the part of the specifications making the estimates of the engineers of the railway company final and conclusive was not in the express terms made a part of plaintiffs' contract, yet the situation and knowledge of the parties at the time the contract was made, and their conduct during the progress of the work, all clearly show their intent to be bound by the stipulation in question, and that such stipulation was worked into and became as fully a part of the contract as though in express terms incorporated therein when made.

Such being the contract between the parties, and the evidence found in the record being as above stated, a brief reference to a few well-settled and fundamental principles governing the effect and the manner of avoidance of such estimates renders entirely clear the rights of the parties to this litigation. Final estimates made by engineers in pursuance of such a contract are in legal effect an award made by arbitrators, and are final and conclusive in the absence of fraud or such gross mistakes as imply bad faith or a failure to exercise an honest judgment. Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106; Sweeney v. United States, 109 U. S. 618, 3 Sup. Ct. 344, 27 L. Ed. 1053; Martinsburg & Potomac R. R. Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; Chicago & Santa Fé R. R. Co. v. Price, 138 U. S. 185, 11 Sup. Ct. 290, 34 L. Ed. 917; Wood v. Chicago, S. F. & C. Ry. Co. (C. C.) 39 Fed. 52; Elliott v. Missouri, K. & T. Ry. Co., 74 Fed. 707, 21 C. C. A. 3; Guild v. Andrews, 137 Fed. 369, 70 C. C. A. 49; Choctaw & M. R. R. Co. v. Newton, 140 Fed. 225, 71 C. C. A. 655; Fruin-Bambrick Const. Co. v. Ft. Smith & W. R. Co. (C. C.) 140 Fed. 465; Hartford F. Ins. Co. v. Bonner Mercantile Co. (C. C.) 44 Fed. 151, 11 L. R. A. 623; Republic of Columbia v. Cauca Co. (C. C.) 106 Fed. 337.

Again, final estimates made by engineers in pursuance of a contract between the parties making such estimates final and conclusive when made the foundation of an action at law, or when interposed as a defense to an action at law, cannot be assailed in such action for fraud, such gross mistakes as imply bad faith, or a failure to exercise an honest judgment on the part of the arbitrators, or other like extrinsic matters, if objection to such method of attack be timely made; but for such relief resort must be had to a court of equity. 2 Story's Eq. Jur. § 1452; 3 Cyc. p. 750; Hartshorn et al. v. Day, 19 How. 211, 15 L. Ed. 605; George v. Tate, 102 U. S. 564, 26 L. Ed. 232; Emmet v. Hoyt, 17 Wend. (N. Y.) 410; Truesdale v. Straw, 58 N. H. 207; Hartford Fire Ins. Co. v. Bonner Mercantile Co. (C. C.) 44 Fed. 151, 11 L. R. A. 623; Missouri, K. & T. Ry. Co. v. Elliott (C. C.) 56 Fed. 772; Vandervelden v. Chicago & N. W. Ry. Co. (C. C.) 61 Fed. 54; Stephenson v. Supreme Council

A. L. H. (C. C.) 130 Fed. 491; Levin v. Northwestern Nat. Ins. Co. (C. C.) 146 Fed. 76; Wood v. Chicago, S. F. & C. R. Co. (C. C.) 39 Fed. 52; Herrick v. Railroad Company, 27 Vt. 673; Kidwell v. Baltimore & Ohio Railroad Co., 11 Grat. (Va.) 676; Mansfield & Sandusky R. R. Co. v. Veeder & Co., 17 Ohio, 396; Grant v. Railroad Co., 51 Ga. 352.

Not only has this precise question been ruled, but the very fact that courts of equity have invariably assumed jurisdiction to determine the validity of estimates made by engineers in pursuance of contracts making their findings final, conclusive, and binding between the parties when sought to be impeached for fraud or other extrinsic matters, is conclusive evidence that a court of law has no jurisdiction over such matters if objection thereto be timely made, for, of necessity, if a court of law possesses such jurisdiction a court of equity does not, for in federal courts the distinction between actions at law and suits in equity, and between legal and equitable defenses, is fundamental and jurisdictional. An equitable defense is not admissible in an action at law. In the national courts a case cannot be part law and part equity; there can be no blending of legal and equitable causes of action and defenses. Anglo-American Land, M. & A. Co. v. Lombard, 132 Fed. 721, 68 C. C. A. 89, and cases therein cited; Bagnell v. Broderick, 13 Pet. 436, 10 L. Ed. 235; Bennett v. Butterworth, 11 How. 669, 13 L. Ed. 859; Thompson v. Railroad Companies, 6 Wall. 134, 18 L. Ed. 765; Foster v. Mora, 98 U. S. 425, 25 L. Ed. 191; Northern Pacific Railroad v. Paine, 119 U. S. 561, 7 Sup. Ct. 323, 30 L. Ed. 513; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358; Scott v. Armstrong, 146 U. S. 499, 512, 13 Sup. Ct. 148, 36 L. Ed. 1059; Lindsay v. First Nat. Bank, 156 U. S. 485, 493, 15 Sup. Ct. 472, 39 L. Ed. 505; Davis v. Davis, 18 C. C. A. 438, 72 Fed. 81; Schoolfield v. Rhodes, 27 C. C. A. 95, 82 Fed. 153; Highland Boy Gold Min. Co. v. Strickley, 54 C. C. A. 186, 116 Fed. 852; Crissey v. Morrill, 60 C. C. A. 460, 125 Fed. 878, 886; Platt v. Larter (C. C.) 94 Fed. 610.

It follows, therefore, of necessity, if plaintiffs, not content to rely on that part of the reply denying estimates of the work done by them under their contract to have been made by the engineers of the railway company, and denying the arbitration clause of the specifications furnished by the railway company to be a part of their contract, desired to avoid estimates which had been made by the engineers of the railway company in pursuance of the contract for reasons set forth in the reply, they must have resort to a court of equity, and could not interpose such defense to the estimates made by the engineers in this action at law if timely objection had been made thereto by the defendants. But, as defendants failed to interpose such objection in the court below, they must be held to have waived it and to have acquiesced in the trial of such equitable issues in this law action, for, it has been held by this court in such cases as this, the objection that an action or any material issue therein raised by the pleadings is cognizable in equity or vice versa is waived by a failure to interpose it in apt time in the trial court. Union Pac. Ry. Co. v. Harris, 63 Fed. 800, 12 C. C. A. 598; Highland Boy Gold Mining Co. v. Strickley, 116 Fed. 852, 54

C. C. A. 186. Hence, while defendants must be held to have consented to the trial of both the legal and equitable issues raised by the reply in this law action because they did not object thereto, yet this waiver did not change the character of proofs required to impeach the validity of the estimates actually made by the engineers of the railway company in pursuance of the contract.

The character of evidence required to overcome the estimates of engineers made in pursuance of a contract between the parties making such estimates final and conclusive as to the measurements and classifications of work done under the contract has very often received the consideration of the courts. The rules as stated by Mr. Justice Redfield in Vandewerker et al. v. Vermont Cent. R. Co., 27 Vt. 130, is as follows:

"After an estimate by the engineer, no recovery could be had beyond that sum, unless upon the most irrefragable proof of mistake in fact, or positive fraud in the opposite party in procuring an under estimate, or corruption in the engineer."

Or as said by this court in Choctaw & M. R. Co. v. Newton, 140 Fed. 225, 71 C. C. A. 655:

"Hence it has become the settled doctrine of the law that to give the contractor any standing in a court of equity to vacate the final award of the engineer, and give him judgment for a greater sum than that allowed in the final estimate, the contractor must show by an overwhelming weight of the evidence that the engineer was guilty of fraud, 'or exhibited such an arbitrary and wanton disregard of the complainant's plain rights under the contract as to be the equivalent of fraud, or committed errors and mistakes to the complainant's prejudice so gross and palpable as to leave no doubt in the mind of the court that grave injustice was thereby done him. * * * It is not material how the weight of the evidence may be upon this point, unless it shall appear reasons for thinking that the chief engineer's judgment was biased, partial, and consciously unjust.'" Mundy v. Louisville & No. Ry. Co., 67 Fed. 633, 638, 14 C. C. A. 583; Elliott v. M., K. & T. R. Co., 74 Fed. 707, 21 C. C. A. 3.

Measured by this rule, we are convinced, from a careful examination of the evidence found in the record, it falls far short of that high standard required to impeach the estimates made by the engineers of the railway company, as that issue was tendered by the reply in this action at law, or had it been adduced by plaintiffs in a proper suit brought to set aside such estimates. For although, as appears from the record, plaintiffs, without objection from defendants or interposition on the part of the court, were permitted to fully try out this issue and bring forward all the proofs they had, yet in all the evidence there is found no suggestion even of fraudulent conduct or unfairness on the part of the engineers making the estimates. The evidence offered by plaintiffs for the purpose of showing the estimates of the engineers to be erroneous is entirely consistent with the good faith of the engineers who made them. In brief, there is an absolute want of any evidence found in the record of the character required to impeach the validity of the estimates made by the engineers of the railway company.

Therefore, as the contract between the parties, as found from a consideration of the entire record, must be held to include the arbitration clause found in the specifications for the doing of the work, and as the

undisputed evidence shows the engineers of the railway company did make estimates of the work done by plaintiffs in pursuance of their contract, and plaintiffs did receive payment for their work based on such estimates, and as there is not even a semblance of evidence to be found in the record of that character required to impeach the validity of the estimates made by the engineers of the railway company in pursuance of the contract under which plaintiffs performed their work, it follows, as a matter of law, the judgment sought to be reversed is right, that plaintiffs were not prejudiced by the errors of which they complain, and the judgment must therefore be affirmed.

CARLAND, District Judge (dissenting). If the court has the right and authority to try the issues between the parties de novo, the result reached by the majority of the court may be justified. The record, however, was brought here by writ of error sued out by the plaintiffs below to review errors of law which occurred at the trial. Eighty-four errors are assigned to the rulings of the trial court. I understand that on writ of error the court is limited to a review of these rulings, and that it will reverse or affirm as it finds prejudicial error or not in the making of the same. That the trial court erred in its charge to the jury is conceded in the majority opinion. But it is therein held that the error was without prejudice, not in relation to the theory on which the case was actually tried, but in relation to a theory upon which a majority of the court thinks it ought to have been tried, Without the defendants in error having any power or authority to complain of any ruling of the trial court against them on this writ of error, the judgment in their favor is affirmed, for the reason that on the theory on which the case ought to have been tried the judgment is right.

The majority opinion says that the court is not attempting to review errors committed at the trial against defendants in error, but that as it appears as matter of law that the trial court erred in holding that the umpire and arbitration clause did not apply to the contract between the parties, and as it appears to the majority that the umpire and arbitration clause did apply, and as it also appears to the majority that there was no competent evidence to impeach the award of the engineers of the Algoma Central Railway, therefore the judgment must be affirmed.

The trial in the court below was had on the theory that the arbitration and umpire clause did not apply. The majority of this court have tried the case here as if the arbitration and umpire clause did apply. In so doing, I believe the court has deprived the plaintiffs in error of a substantial right. This court will not allow litigants to try a case below on one theory, and when the case is brought here try it on another. Does not the decision of the court herein accomplish the same result? It is certainly true that the plaintiffs in error have never tried their case on the theory that the arbitration and umpire clause did apply, and yet the judgment against them is affirmed on that theory alone. On the theory on which the case was tried below, there was confessedly prejudicial error in the charge of the court, saying nothing about the other errors assigned.

I think the judgment below should be reversed and a new trial ordered, so that a fair opportunity may be given to the plaintiffs to present such case as they may have.