AMERICAN FIDELITY CO. v. VELIE. †

(Circuit Court of Appeals, Eighth Circuit. April 22, 1912.)

No. 3,651.

1. PRINCIPAL AND SURETY (§ 117*)—CONTRACTOR'S BOND—CONSTRUCTION—
    REMEDY FOR BREACH.
    A building contractor's bond obligated the owner to require receipted bills before paying the stipulated installments of the contract price, and that on the contractor's failure to do so the owner should immediately notify the surety and "on demand pay to the [surety] company all moneys which would have been due and payable to the principal had the principal produced such receipted bills." *Held*, that the parties having stipulated for a certain consequence in case of the principal's failure to furnish receipted bills which did not include the invalidation of the bond, and the surety company having been duly notified, but having made no demand for the moneys according to the stipulation, it was no defense that the owner paid installments of the ∽contract price to the contractor without requiring him to produce receipted bills.
    [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 283–285; Dec. Dig. § 117.*]

2. PRINCIPAL AND SURETY (§ 100*)—BUILDING CONTRACTOR'S BOND—CHANGE
    OF PLANS.
    A contract for the construction of a garage provided that no alterations should be made in the work except on written order of the architect; the amount to be paid by ·the owner or allowed by the contractor by virtue thereof to be stated in the order. The contract also authorized the owner, in case of the contractor's default certified to by the architect, to take possession and complete the work at the expense of the contractor's surety. Only one change was made before the contractor abandoned the work, and the owner entered on its completion, which arose out of a mistake in estimate connected with the south wall of the building for which an allowance was approved and made in writing by the architect. *Held*, that the changes made after the owner took possession at his own expense were not prejudicial to the contractor's surety, and the change made prior to the owner's taking possession having been in strict accordance with the contract, the surety was not discharged by reason of alleged alterations in the work contracted for.
    [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 162–165; Dec. Dig. § 100.*
    Discharge of surety on building contract by change in obligation or duty of principal, see note to United States v. Walsh, 52 C. C. A. 427.]

3. PRINCIPAL AND SURETY (§ 75*)—BUILDING CONTRACTOR'S BOND—COMPLE-
    TION OF WORK—COST—CERTIFICATION BY ARCHITECT.
    A building contract, after providing that the owner might take possession and complete the work in case the contractor failed to prosecute it diligently, authorized the architect to audit and certify the additional cost over and above the contract price, and provided that his certificate should be conclusive on the parties. *Held*, that the contractor having abandoned the work unfinished, and the architect having certified the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Rehearing denied July 1, 1912.

amount necessary to complete the same, such amount was conclusive against the contractor's surety in the absence of fraud or gross mistake.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 128; Dec. Dig..§ 75.*]

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Missouri.

Action by S. H. Velie, doing business as the Velie Motor Company, against the American Fidelity Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This is an action by the owner against the surety on a contractor's bond conditioned for the faithful performance by the contractor of a contract to build a garage for the owner. The plaintiff in error, the surety, pleaded: First, that the owner and contractor changed the terms of the contract so as to require the latter to construct a different building from that for the construction of which the surety had become bound. Second, that the owner paid the contractor large sums of money without requiring the latter to produce receipted bills for material furnished and work done, in violation of a provision of the bond prohibiting the same. Third, that the owner failed to notify the surety of the abandonment of the contract by the contractor and did not permit the surety to complete the building, contrary to a provision of the bond obligating him to do so.

At the close of all the evidence each party requested the court to direct a verdict in its favor, thereby affirming that there was no disputed question of fact in the case. Empire State Cattle Co. v. Atchison, T. & S. F. Ry. Co., 77 C. C. A. 601, 147 Fed. 457, and cases cited. The request by the plaintiff was granted, and the jury found accordingly, in the sum of $6,143.77. Exceptions having been duly saved, the case is brought here by the defendant for review.

Joseph S. Brooks (L. C. Boyle and Charles M. Howell, on the brief), for plaintiff in error.

Henry D. Ashley (William S. Gilbert, on the brief), for defendant in error.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

ADAMS, Circuit Judge (after stating the facts as above). The contract obligated the contractor to complete the garage on or before December 15, 1909, and the owner to pay him $16,548.50 therefor. It also contained a provision empowering a named architect to determine whether the contractor was prosecuting his work with promptness and diligence, and if in the judgment of the architect he was not doing so, and the architect should so certify, enabling the owner to terminate the contract, take possession of the premises, complete the job, and charge any excess of the cost of doing so, over and above the contract price, to the contractor. It also contained this provision:

"The expense incurred by the owner as herein provided, either for furnishing material or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclusive upon the parties."

The bond sued on obligated the principal and surety to make good to the owner any loss and damage which he might sustain by reason of any failure or default of the contractor.

The evidence conclusively showed that the architect determined and duly certified that the contractor was not performing his work according to the requirement of the contract; that the owner terminated the same, took possession of the work, and finished it at a cost for the work contemplated by the contract over and above the contract price of $6,143.77; and that this amount was duly audited and certified to by the architect.

There is no proof that the owner failed in any respect to give the notices required by the bond to the Surety Company or failed to permit the Surety Company to take possession of the work and finish it. On the contrary, it affirmatively appears that those requirements of the bond were duly performed by the owner.

[1] The defense predicated upon the alleged fact that the owner paid installments of the contract price to the contractor without requiring him to produce receipted bills for material furnished and work done is without any merit.

It is true the bond obligated the owner to require such receipted bills before paying the stipulated installments of the contract price. But, according to the provisions of the bond, the failure to do so constituted no ground of its defeasance. This was the stipulated consequence: That the owner should immediately notify the Surety Company of it and "upon demand pay to the company all moneys which would have been due and payable to the principal had the principal produced such receipted bills." The proof shows that the Surety Company was duly notified, and there is no proof that a demand was ever made by the Surety Company for the moneys according to the stipulation. The parties, having stipulated for a certain consequence in the nature of a remedy for a breach of the covenant which did not include the invalidation of the bond, must be held bound by it.

[2] The next question is whether the contract for the building of the garage was so changed or altered without the consent of the surety as released it from its obligation on the bond.

The contract contained this stipulation:

"No alterations shall be made in the work except upon written order of the architect; the amount to be paid by the owner or allowed by the contractor by virtue of such alterations to be stated in said order."

Only one change was made before the contractor abandoned the work and the owner entered upon its completion, and that arose out of a mistaken estimate connected with the south wall of the building for which an allowance was approved and made in writing by the architect of $190. This change was made pursuant to the provisions of the contract under and subject to which the bond was executed, and manifestly constitutes no ground of defense to this action.

There was no attempt to show any other change except what is involved in the following offer of proof, made by defendant's counsel:

"I want to make an offer to show by this witness that there are certain alterations in the building from the plans and specifications; that there is a brick wall in the basement that is not in the plans; that there are par-

titions on the second floor not in the plans and specifications; and that the fire wall has been carried up * * * 18 inches higher than the plans and specifications provide, thereby showing that the building, *as constructed by the owner after he had taken possession*, is different from that provided in the contract in these respects."

According to this offer of proof, there was no claim that any change was made before the contractor breached his contract. On the contrary, the alterations proposed to be shown were limited to such as were made after the breach and after the owner had taken possession and undertaken to finish the work. They imposed no additional obligations or burdens upon the contractor, which could by any possibility have induced or brought about the failure to perform his contract. That was a thing of the past. The failure had already occurred, and the owner by reason thereof was left independent and free to make such changes as he pleased, provided only he made them at his own cost and expense. All the Surety Company could be concerned in was that nothing should be charged against it on account of such subsequent additions or changes. Its liability was measured by the actual cost of the building as contracted for and by no consideration of the cost of subsequent changes. George A. Fuller Co. v. Doyle (C. C.) 87 Fed. 687.

[3] It is next contended that the Circuit Court erred in not permitting defendant to make proffered proof that the building could actually have been constructed by the owner for the contract price—that is, at no loss.

Article 5 of the contract, after providing that the owner might take possession and complete the work in case the contractor failed to prosecute it diligently, authorized the architect to audit and certify the additional cost for finishing the work over and above the contract price, and expressly provided that his certificate thereof should be conclusive upon the parties.

This was binding, not only upon the parties to the contract, but upon the Surety Company which assumed the obligations and stood in the shoes of the contractor. The plaintiff below counted on an audit and certificate of the chosen architect as the basis of his right of recovery, and these were abundantly proven. They have never been impeached for fraud or gross mistake. They stand, therefore, as the deliberate, honest judgment of an arbitrator chosen by the parties, and are final and conclusive. Cook v. Foley, 81 C. C. A. 237, 152 Fed. 41, and cases cited.

In fact, no attempt was made to impeach or criticise them. The defendant simply ignored them and sought to proceed notwithstanding the agreement of its principal to be bound by them. There was no error in refusing to accept the proof so offered.

Some other propositions were advanced in argument by counsel for plaintiff in error. They have all been adequately considered and found to be without merit.

The judgment below is affirmed.

SANBORN, Circuit Judge (dissenting). The contract price of the garage was $16,548.50. The plaintiff pleaded that the construction of

the building cost him $6,143.77 more than the contract price, and he brought this action to recover this excess and for nothing else. The defendant answered that the building constructed by the plaintiff was not that contemplated by the parties or required by the contract, but that it was a different kind of a garage from that mentioned in the contract, plans, and specifications. The issue presented by the pleadings, therefore, was whether or not the garage constructed was the building described in the contract and in the plans and specifications which accompanied it. At the trial the plaintiff introduced in evidence the certificate of the architect that the amount of the expense incurred by the plaintiff in the construction of the garage was $6,-143.77 more than the price specified in the contract. But he did not certify that the garage constructed by the plaintiff corresponded with that called for by the contract or with the plans and specifications which accompanied the contract. And the plaintiff produced no other evidence to that effect. Thereupon the defendant offered to prove, by a competent witness upon the stand, that the garage which the plaintiff actually built differed from that contracted for in certain specified ways, and that although the garage actually constructed cost $6,143.77 more than the contract price, the garage contracted for could have been reasonably constructed for that price. In my opinion it was a good defense to the action to recover the $6,143.77 excess above the contract price that the plaintiff paid this excess for the construction of a building which cost $6,143.77 more than the building contracted for would have cost. I think this issue was fairly raised by the pleadings, that the evidence offered by the defendant was competent to prove it, and that if this evidence had been received and had been uncontradicted it would have established that defense, and the certificate of the architect would not have estopped the Surety Company from making it. The certificate in my opinion would not have estopped, and did not estop, the defendant from establishing this defense because the architect did not certify therein, nor did he testify, that the garage actually constructed by the plaintiff corresponded with that described in the contract, plans, and specifications, and also because if he had made such a certificate evidence that the contracted garage could have been built for the contract price, $16,458.50, would have been competent, for it would have shown such a gross mistake in certifying that it cost under the supervision of this architect three-eighths more than the contract price that this proof would have implied bad faith or a failure to exercise an honest judgment on his part, and thus would have warranted an avoidance of his certificate. Guild v. Andrews, 137 Fed. 369, 371, 372, 70 C. C. A. 49; Cook v. Foley, 152 Fed. 41, 51, 81 C. C. A. 237. It seems to me so clear that it was error in the court below to refuse to receive this evidence that the Surety Company was thereby deprived of a good defense, and that the judgment ought to be reversed and a new trial ought to be granted in this case, that I find myself unwilling to assent to an affirmance of the judgment below.