———o———

STATE OF MISSOURI; *ex rel.*, JOHN S. CAVENDER; Appellant, *vs.* THE CITY OF ST. LOUIS, *et al.*, Respondents.

1. *St. Louis—Sewer—Route of in district—Need not be determined by ordinance.* —Under § 12, Art. VIII. of the charter of the City of St. Louis, of 1870, the City Council must establish the sewer districts by ordinance. But it need not pass another and special ordinance to determine the particular route, or dimensions or material or laterals of the sewer within the district. These details may be determined by ordinance, or be entrusted to the engineer to be regulated by contract.

2. *St. Louis—Sewer—Plans and profiles—To be submitted to the City Council, when.*—The plans, profiles and estimates mentioned in § 17, Art. VIII of the St. Louis charter of 1870, are required to be prepared and submitted to the City Council, only in cases where the work is done by the city, and paid for by appropriations out of the city treasury.

*Appeal from St. Louis Circuit Court.*

*S. A. Holmes,* for Appellant.

I. Ordinance No. 7550 establishes a sewer district, but no sewers in the district; and it purports to delegate to the city engineer the power to determine how many sewers there shall be, and where the same shall be located. (Sess. Acts 1870, Art.VIII, § 12, p. 480; Ruggles vs. Collier, 43 Mo., 353; also Sess. Acts 1870, Art, III, § 1, pp. 463 and 464, subd. 6; Murphy vs. Clemens, 43 Mo. 395.)

II. There was no compliance with the requirements of § 17, Art. VIII, of the act above cited. No plans, profiles or estimates of the cost of any sewers were ever submitted by the city engineer to the council. There could be no valid contract without such submission. (State, *ex rel.,* Dunn vs. Barlow, 48 Mo. 17.)

*Sharp & Broadhead,* for Respondents.

WAGNER, Judge, delivered the opinion of the court.

This was a petition for a writ of certiorari to bring up the record of the proceedings of the city of St. Louis and its officers, in the matter of the establishment and construction of sewers in Compton Avenue sewer district No. 10, and the assessment of a special tax against the relator and his property for the payment of the cost of such construction. It is alleged in the petition that the proceedings on the part of the city and its officers are illegal; because, first, no ordinance was ever passed by the city council, establishing and locating any sewers in the said Compton avenue sewer district, as required by the twelfth section of the eighth article of the present city charter; secondly, because the city engineer did not at any time prepare and submit to the city council any plans, profiles or estimates of the cost of any district sewers to be constructed in said sewer district according to section 17 of the 8th article of the same act; and, thirdly, because ordinance numbered 7550, by the supposed authority of which the sewers were constructed, did not have any indorsement

by the city engineer of any estimate of the whole cost of any sewers proposed to be constructed in said district, as required by the 18th section of the same article of the charter.

It was further averred that the acts of the city in the premises, and of the city engineer in making the contract for the work, the assessment of the tax, and issuance of the bill against the relator and his property, were without authority of law, and void. Upon the facts stated, the Circuit Court awarded the writ, which was duly served, and the respondents, instead of making a return thereto, moved to quash the writ and dismiss the petition, which motion was sustained, and the case is now brought here upon the sufficiency of the petition to justify the writ. The motion to quash may be regarded as a demurrer to the petition, and the only question, therefore, is whether the petition showed that the plaintiff was entitled to any relief.

The ordinance under which the work was done defined the limits of the sewer district, and then provided that the city engineer should cause district sewers to be constructed within the said district, with all the lateral sewers, inlets and other appurtenances necessary to render said sewers complete and efficient. The main sewer was required to be thirty inches in mean diameter, and to be made of brick, and laid in hydraulic cement mortar, and the lateral sewers for inlets were to be made of sewer pipe fifteen inches in diameter. Provision was then made for charging the cost of the construction of the sewers as a lien upon the property-holders in the district.

Section 12 of article 8, referred to in the petition, (Acts 1870, p. 480) reads as follows: " District sewers are payable by property owners, and shall be established within the limits of districts to be prescribed by ordinance; connecting with a public sewer, district sewers, or some natural course of drainage. Such district may be sub-divided, enlarged, or changed by ordinance at any time previous to the construction of the sewer therein. The city council shall cause sewers to be constructed in any district, whenever a majority of the

property-holders resident therein shall petition therefor, or whenever the city council may deem it necessary for sanitary or other purposes, and the character, dimensions and material of such sewers shall be prescribed by ordinance or contract, and may be changed, diminished, enlarged or extended by ordinance, and shall have all the requisite laterals, inlets, and other appurtenances. As soon as a district sewer is fully completed, the city engineer shall compute the whole cost thereof, and shall assess it as a special tax against all the lots of ground in the district respectively, without regard to improvements, and in proportion as their respective areas bear to the area of the whole district, exclusive of the public highways, and said officer shall make a certified bill of such assessment against each lot in the district, in the name of the owner thereof, which shall be collected and paid in the manner hereinafter prescribed ; provided that the repairs and other incidental expenses of district sewers shall be paid out of the general revenue."

Section 17, referred to, declares : " The council shall have no power directly to contract for any public work, or improvements or repairs thereof, contemplated by this charter, nor to fix the price or rate thereof; but the city engineer shall in all cases, excpt in cases of necessary repairs, prepare and submit to the council plans, profiles and estimates of cost of any proposed work, and, under the direction of the ordinance, shall advertise for bids, and let out said work by contract to the lowest and best bidder, subject to the approval of the council. Any other mode of letting out work shall be held as illegal and void."

And the next succeeding (18th) section provides: " Every ordinance requiring such work to be done, shall contain a specific appropriation from the proper revenue or fund, based upon an estimate of the cost, to be indorsed by the engineer on said ordinance, for the whole of the cost of each street, part of street, or other object respectively, and every contract shall contain a clause to the effect that it is subject to the provisions of the charter, that the aggregate payments thereon

shall be limited by the amount of such specified appropriation, and that on ten days' notice the work on said contract may, without cost to, or claim against the city, be suspended by the city engineer with the approval of the mayor, for want of means, or other substantial cause." _ * * *

To reverse the judgment of the court below, the appellant relies on the principles of law laid down in the cases of Ruggles vs. Collier, (43 Mo. 375) and Murphy vs. Clemens, (*Id.* 395). But after these decisions, the charter of the city was amended, and the provisions upon which those cases were decided, have been materially altered. The charters of 1866 and 1867 required that the dimensions, etc., of the sewers should be prescribed by ordinance. But the charter in this respect was changed in 1870, and now provides that they shall be prescribed by ordinance or contract. The council must establish the district by ordinance, but how or where the sewer shall be constructed, the dimensions and materials may be either prescribed by ordinance, or it may be agreed upon and stipulated in the contract, under the direction of the city engineer, who makes it on the part of the city, and which, before it becomes binding and effective, has to be approved by the city council. The twelfth section, after declaring that district sewers shall be established within the limits of the districts to be prescribed by ordinance, expressly confers the power on the city council, to cause sewers to be constructed, and leaves the character, dimensions and materials to be determined either by ordinance or contract. Under the foregoing provision, the ordinance requiring the construction of sewers may be general in its character, and the matter of details may be intrusted to the engineer, to be regulated by contract. It was not intended that when a sewer district was established, it should be necessary to pass a special ordinance to authorize the construction of each lateral sewer.

Section 17 will not bear the construction placed upon it by the appellant. The plans, profiles and estimates there mentioned, are only required where the work is done by the city, and paid for by appropriations out of the city treasury. This

is evidently shown by the 18th section, which directly refers to the preceding section, and says that every ordinance requiring such work to be done, shall contain a specific appropriation from the proper revenue or fund, and provision is then made for stopping or suspending the work for want of means. This part of the charter has no application whatever to work done or carried on at the expense of the property-holder.

I see no error in the action of the Circuit Court, and its judgment must be affirmed. The other judges concur.