GUILD et al. v. ANDREWS et al.

(Circuit Court of Appeals, Eighth Circuit.   April 17, 1905.)

No. 1,977.

1. CONTRACTS—CONSTRUCTION OF SEWER—PROVISION MAKING ENGINEER'S DECISION FINAL—CONCLUSIVENESS OF HIS ACTION.

A stipulation in a contract for the construction of a sewer, making an engineer the arbiter of the amount and character of the work done, its conformity to the contract, and the compensation to be paid, is valid and obligatory on the parties, and the engineer's action thereunder is final and conclusive, in the absence of fraud or such gross mistakes as imply bad faith or a failure to exercise an honest judgment.

[Ed. Note.—For cases in point, see vol. 36, Cent. Dig. Municipal Corporations, § 890.]

2. SAME—PRESUMPTION OF GOOD FAITH ON PART OF ENGINEER—WHEN OVERCOME BY GROSS MISTAKES.

While it is sometimes said that, to be efficient to destroy the final and conclusive character of the engineer's action, gross mistakes must be such as not only to imply, but to necessarily imply, bad faith, the distinction is ideal, rather than practical. Good faith, which is presumed in the absence of clear and convincing evidence to the contrary, renders the action of the engineer final and conclusive. Bad faith renders it of no effect. Gross mistakes imply bad faith only when, all the circumstances duly considered, they cannot be reconciled with good faith, and then they not only imply, but necessarily imply, bad faith.

3. SAME—ACTION OF ENGINEER'S AUTHORIZED INSPECTORS—INSTRUCTION TO JURY.

Instructions to the effect that if the work was done in the presence of the engineer's authorized inspectors, and as directed or permitted by them, the contractors would not be responsible for or affected by any defects due to mistakes of the inspectors, whether or not the manner in which they directed or permitted the work to be done was in accordance with the contract, were properly refused, because such instructions erroneously assumed that the municipality would be concluded by all mistakes of the inspectors, whether made honestly and in good faith, or otherwise, and because they erroneously disregarded the provision of the contract requiring the engineer to make a final and careful inspection of the work after its completion, and the further provision requiring the contractors to take out and replace any work found to be imperfect prior to final acceptance, whether it had been passed upon by an inspector or not.

4. SAME—CONCLUSIVE EFFECT OF ENGINEER'S FINAL ACCEPTANCE—BAD FAITH—INSTRUCTION—ERROR NOT PREJUDICIAL.

An instruction that "any failure of the engineer to consider all matters submitted to him is, to that extent, a fraud upon the party discriminated against," is error, if standing alone and broadly applicable to each and all of the many matters of varying degrees of importance bearing upon the proper completion and acceptance of the work. The effect of a failure to consider any particular matter depends, as in the instance of other mistakes, upon whether the failure was fraudulent or so gross as to imply bad faith. But, it appearing in the present case that the jury must have found that there was an entire failure on the part of the engineer to make a final and careful inspection of the work as required by

the contract, and therefore a failure to consider whether the work as completed conformed to the requirements of the contract, the error in the instruction was without prejudice because a failure to consider the character and effect of the completed work, under such a contract, is so gross a departure from duty as to imply bad faith and render the engineer's acceptance inconclusive.

5. INSTRUCTIONS—NO ERROR IF CHARGE AS AN ENTIRETY IS IMPARTIAL AND CORRECT.

Where in its entirety the charge is an impartial and correct exposition of the law applicable to the questions arising upon the evidence, error cannot be successfully assigned upon portions of the charge which appear to be subject to criticism when separated from the context and from the main body, but which are not subject to criticism when considered in connection with the immediate context and other portions.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

This was an action at law by the sewer district against George Guild, J. C. Guild, and the United States Fidelity & Guaranty Company to recover damages claimed to have been sustained by the plaintiff through the failure of the Guilds, for whom the guaranty company was surety, to construct and complete a sewer system in accordance with a contract entered into with the sewer district. The defense was that the sewer system had been constructed and completed under the supervision and to the satisfaction of the engineer selected by the sewer district, and that the terms of the contract made his acceptance of the work final and conclusive. The defendants Guild also interposed a counterclaim for a balance claimed to be due to them under the contract. The crucial issue presented by the pleadings, and to which the evidence was directed, was whether or not the engineer's supervision and acceptance of the work were fraudulent or attended by such gross mistakes as implied bad faith or a failure to exercise an honest judgment. These provisions were in the contract:

"19. * * * No pipe shall be laid, or other construction work done, except in the presence of the engineer or his authorized inspectors, and the engineer may order the removal and relaying of any pipe or the reconstruction of any work which has been done without such presence. * * *"

"25. Upon notification by the contractor of the completion of the work, the engineer will carefully inspect all sewers, appurtenances and all other work done by the contractors. * * * In general the work shall comply with these specifications, and if found not to be so in any respect, it shall be brought to the proper conditions by cleaning, pointing, or if necessary excavating and rebuilding, all at the expense of the contractor. But if it be found, after uncovering any pipe or other work, at the order of the engineer, that no defects exist, or that a defect was not due to the fault of the contractor, then the expense of this shall be borne by the District.

"26. * * * The work shall be prosecuted in such manner and from as many different points, at such time and with such force as the engineer may determine from time to time during the progress of the work. * * *"

"28. When any work or material is found to be imperfect, whether passed upon by the inspector or not, the said work shall be taken up and replaced by new work without delay, at any time prior to final acceptance. * * *"

"33. The Engineer-in-charge shall have the final decision of all matters in dispute involving the character of the work, the compensation to be made therefor, or any question arising under this contract. He shall, as representing the District, have the option of making any changes in the line, grade, plan, form, position, dimensions or material of the work herein contemplated either before or after construction is begun, and all other explanations or directions necessary for carrying out or completing satisfactorily the different descriptions of work contemplated and provided for under this contract will be given by the engineer.

"34. The contractor must perform the work contracted for strictly according to these specifications, and follow at all times, without delay, all orders

and instructions of the engineer in the prosecution and completion of the work, and every part thereof, and be constantly on the ground or be represented by a duly qualified person to look after the work and receive instructions.

"35. * * * When the contract shall have been completely performed on the part of the contractor, the engineer shall proceed to make final measurement and estimates of same, and shall certify the same to the Board. * * *"

The jury found for the plaintiff, and the defendants now seek to reverse the judgment which was rendered upon the verdict.

Frank Spurlock and J. F. Loughborough (F. V. Brown and D. H. Cantrell, on the brief), for plaintiffs in error.

M. L. Stephenson and Jacob Fink (R. W. Nicholls, on the brief), for defendants in error.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

VAN DEVANTER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

A stipulation in a contract like the one here sued upon, making an engineer, inspector, or other person the arbiter of the amount and character of the work done, its conformity to the contract, and the compensation to be paid, is valid and obligatory upon the parties, and the action of the arbiter thereunder is final and conclusive, in the absence of fraud or such gross mistakes as imply bad faith or a failure to exercise an honest judgment. Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106; Sweeney v. United States, 109 U. S. 618, 3 Sup. Ct. 344, 27 L. Ed. 1053; Martinsburg & Potomac R. R. Co. v. March, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; Chicago, Santa Fe & California R. Co. v. Price, 138 U. S. 185, 11 Sup. Ct. 290, 34 L. Ed. 917; United States v. Gleason, 175 U. S. 588, 20 Sup. Ct. 228, 44 L. Ed. 284; Elliott v. Missouri, Kansas & Texas Ry. Co., 21 C. C. A. 3, 74 Fed. 707; United States v. Bonness, 60 C. C. A. 321, 125 Fed. 485; Hot Springs Ry. Co. v. Maher, 48 Ark. 522, 3 S. W. 639.

The contention is made that, to be efficient to destroy the final and conclusive character of the arbiter's action, gross mistakes must be such as not only to imply, but to necessarily imply, bad faith. The distinction is ideal rather than practical, as is illustrated in Martinsburg & Potomac R. Co. v. March, and Chicago, Santa Fé & California R. Co. v. Price, supra, where the two expressions are used interchangeably and as having the same meaning. Good faith, which is presumed in the absence of clear and convincing evidence to the contrary, renders the action of the arbiter final and conclusive. Bad faith renders it of no effect. Gross mistakes imply bad faith only when, all the circumstances duly considered, they cannot be reconciled with good faith, and then they not only imply, but necessarily imply, bad faith.

The evidence produced upon the trial covers more than 800 pages of the printed record. It has been attentively read and carefully considered, with the result that we are agreed in the conclusion that there was substantial evidence tending to show mis-

takes in the work so numerous, so serious, so readily observable, so generally favorable to the contractors, and therefore so gross, as to imply bad faith in the supervision and acceptance of the work. There was also substantial evidence to the contrary. The conflict made it necessary to submit the case to the jury, and the defendants' request for a directed verdict was properly refused.

Several instructions requested by the defendants were to the effect that if the work was done in the presence of inspectors, and as directed or permitted by them, the contractors would not be responsible for or affected by any defects due to mistakes of the inspectors, whether or not the manner in which they directed or permitted the work to be done was in accordance with the contract. These requests were properly refused because they erroneously assumed that the sewer district would be concluded by all mistakes of the inspectors, whether made honestly and in good faith, or otherwise, and because they erroneously disregarded the provision of the contract requiring the engineer to make a final and careful inspection of the work after its completion, and the further provision requiring the contractors to take out and replace any work found to be imperfect prior to final acceptance, whether it had been passed upon by an inspector or not. In this connection it should be observed that the court charged the jury that as the inspectors represented the engineer, and were clothed with a power of supervision over the work as it progressed, mere negligence or errors of judgment on their part would not be chargeable to the contractors.

One portion of the charge was as follows:

"As fraud can but seldom be proven by direct evidence, the jury should carefully consider all the evidence and circumstances surrounding all the acts of the engineer and the contractors, in order to determine from them whether he acted honestly and in good faith when he supervised, inspected, and at last accepted the work as being in accordance with the terms of the contract and the specifications thereof, and certified the amounts which are now claimed by the defendants in this action."

It is said of this instruction that it was calculated to cause the jury to regard all the acts of the engineer and the contractors with suspicion, and to have the effect of transferring the burden of proof from the plaintiff to the defendants. The criticism has very slight, if any, justification in the terms of the instruction, and has no justification in the charge as an entirety because in the same connection the jury were plainly told that the law presumes honesty and good faith, and places the burden of proof upon him who asserts the contrary.

Another portion of the charge of which complaint is made is as follows:

"You will consider whether, in passing on this work, he was guilty of such gross errors or mistakes as would lead you to believe he acted fraudulently for the purpose of favoring the contractors, for, in the absence of direct testimony to establish fraud, gross errors, which an experienced and competent engineer, acting honestly, is not reasonably supposed to make, and which materially favor one of the parties to the contract at the expense of the other party, raise a strong presumption of fraud, which, if not explained, may make this presumption conclusive."

This instruction permitted the jury, in determining the honesty and good faith of the engineer's action, to consider what would have been the probable action of an experienced and competent engineer, acting honestly, in the same situation; but, as the uncontradicted evidence disclosed that the engineer had had large experience and was of acknowledged competence, the instruction was not objectionable as permitting his action to be judged according to a standard of experience and competence which he did not possess. It is said that an experienced and competent engineer may commit gross mistakes, not reasonably supposable of him, which materially favor one party at the expense of the other, and yet are due to mere negligence or errors of judgment, and not to fraud or bad faith; and therefore it is claimed this instruction permitted the jury to presume fraud or bad faith from gross mistakes which were reconcilable with honesty and good faith. This interpretation of the instruction, if permissible at all, is not so apparent as to have created any misapprehension or confusion in the minds of the jurors, when other portions of the charge are considered. In terms which are unmistakable, and which the jury could not have failed to regard as controlling, it was stated and reiterated in other portions of the charge that the action of the engineer could not be revised for mere negligence or errors of judgment, even though injurious to the sewer system, and that, unless he was guilty of such gross mistakes as implied bad faith or a failure to exercise an honest judgment, his action was unassailable and conclusive. Certainly, if he committed gross mistakes, which an engineer of his experience and competence, acting honestly, would not be reasonably supposed to make, which were not reconcilable with mere negligence or errors of judgment, and which materially favored one party to the contract at the expense of the other, a strong implication of bad faith would arise therefrom, which, in the absence of an explanation, would be conclusive. We think this was plainly the effect of the instruction when considered in connection with other portions of the charge.

One portion of the charge was as follows:

"The contractors cannot avoid the loss and expense where it appears, from the nature of the work done, that, if passed on favorably by the engineer in charge, he was guilty of gross mistakes in the performance of his duty towards his employer. Where the work approved by the engineer is so defective that any man of ordinary prudence, familiar with such work, as the contractors, according to the evidence in this case are shown to be, must know that it would not attain the object for which it is intended, then a strong presumption of fraudulent collusion between the contractors and the engineer in charge may naturally arise, although it is not conclusive. Their duty would be to notify the sewer district of these acts of the engineer, if it is apparent to them, as reasonable men, that his acts are such as will result in disaster, and perhaps defeat the object for which the work is intended and contemplated."

It is said that this instruction embodies three erroneous propositions: (1) That the contractors could not avoid the loss if it was apparent to them that the engineer was guilty of gross mistakes in the acceptance of the work, regardless of whether these mistakes were such as to imply bad faith; (2) that a strong pre-

sumption of fraudulent collusion between the contractors and the engineer arose if the work approved by the latter was so defective that the contractors must have known it would not attain the object for which it was intended; (3) that the contractors should have notified the sewer district if it was apparent to them that the action of the engineer was such as to result in disaster. At the trial one contention of the defendants was that, even though the engineer acted fraudulently in accepting the work, his action was final and conclusive, unless the contractors participated in the fraud. This instruction had reference to that contention, and, as its terms show, was directed to matters from which it might be properly inferred that the contractors participated in the fraud, rather than to a statement of what gross mistakes would render the engineer's action inconclusive. That had been carefully and correctly stated in an earlier portion of the charge, and, when gross mistakes were subsequently mentioned, reference was plainly had to that statement. This is illustrated by the concluding statement in the charge, which was as follows:

"There are one or two slight corrections I want to make in my charge to you. My attention was called to the fact that I used the words 'carelessly' and 'negligence' in speaking of the examination of the work of the action of the engineer. If I did, I did not mean to use the words 'carelessly' or 'negligence.' What I meant was 'recklessly' and 'gross mistakes.' Now, his conduct, in order to imply bad faith, must have been reckless, and he must have been guilty of such gross mistakes as to imply bad faith. That is what I meant."

But the instruction under consideration was not altogether silent in respect of what was meant by gross mistakes. It spoke with reasonable accuracy when it referred to the engineer's approval of work which was so defective that any man of ordinary prudence familiar therewith must know that it would not attain the object for which it was intended, and also when it referred to acts of the engineer which it would be apparent to reasonable men would result in disaster. It is not reasonably conceivable that the contractors, with knowledge that the conditions were as stated in the instruction, would have remained silent and have sought to avail themselves of the engineer's action unless they were participating in his breach of duty and bad faith. If they did participate therein, his acceptance of the work was inconclusive, and they were liable for the loss and expense reasonably incurred by the sewer district in completing the work in accordance with the contract.

Another portion of the charge was as follows:

"But the engineer cannot dispense with a substantial part of the work. Thus, as the contract provided for substantial foundations for the pipes where the ground is so soft that it will not support them without a foundation, his failure to require the contractors to put dry dirt, sand, or concrete under them would not be conclusive on the district, and would be evidence to be considered by you on the question of fraud and collusion with the contractors, especially if the contractors, as experienced sewer builders, should have known and did know that without such foundations the pipes in these places would sink, and thus seriously affect the sewer system and its efficiency."

The criticism of this instruction is that the contract clothed the engineer with large discretion in making changes in the specifica-

tions, and that, if he dispensed with the pipe foundations in the exercise of an honest judgment, his action was final and conclusive, even though the change subsequently proved to be a detriment to the sewer system. But all this was plainly conceded in the charge. In close connection with the portion complained of, it was said that the contractors would not be affected by the fact that changes in the specifications made in good faith by the engineer afterward proved to be injurious to the sewer district, and also that if, through an error of judgment of the engineer, committed in good faith, sufficient foundations were not placed under the pipes, and the work had to be altered in this respect after its acceptance, the contractors would not be liable for the cost of the alteration, but that it would be otherwise if the foundations had been dispensed with fraudulently for the purpose of saving expense to the contractors. When all that was said upon the subject is considered, it is apparent that the law was correctly stated.

Error is assigned upon this passage in the charge: "Any failure of the engineer to consider all matters submitted to him is, to that extent, a fraud upon the party discriminated against." If this passage had stood alone, and if the case made by the evidence had permitted the jury to apply it broadly to each and all of the many matters submitted to the judgment of the engineer, it would have been prejudicial error. Of course, it was the engineer's duty to consider each of the matters submitted to him by the contract, but not every failure to perform his duty would render his final action inconclusive. The effect of the failure, as of any other mistake, would depend upon whether it was fraudulent, or was so gross as to imply bad faith. If he honestly and in good faith accepted the work after finally inspecting it, the acceptance was conclusive, even though he failed to consider some of the many matters which it was his duty to consider. Necessarily the acceptance of the work, as completed according to the contract, depended upon the consideration of so many matters of varying degrees of importance that it was possible for him to overlook or neglect some of them, and yet be in the exercise of an honest judgment. But the passage complained of did not stand alone. It was preceded by the statement that when the pleadings impugn the engineer's conduct, and the evidence tends to show that he "willfully disregarded his duties," it becomes necessary "for the jury to determine whether he acted negligently, merely, but honestly, or whether he acted fraudulently," and it was followed by the statement that the verdict must be for the defendants "if you find there was no fraud on the part of the engineer when he made the final inspection and accepted the work and certified it as being complete, nor * * * such gross mistakes as would imply bad faith or failure to exercise an honest judgment." These further statements so clearly put the matter before the jury in the right way that error was avoided. Much of the evidence was directed to the claim on the part of the plaintiff that there had been an entire failure to make a final inspection, and therefore a failure to consider whether the work, as completed, conformed to the requirements of the contract, and the record makes it

certain that this question was resolved in favor of the plaintiff by the verdict of the jury. In this situation, the error in the instruction, even if not avoided by other portions of the charge, was clearly without prejudice, because the provisions of the contract were such that a failure to consider the character and effect of the completed work was so gross a departure from duty on the part of the engineer as to imply bad faith and render his acceptance of the work inconclusive.

It may be properly observed of the charge that it was almost necessarily a long one, and, as is not infrequently true, some portions, when separated from the immediate context and from the main body, appear to be subject to criticism; but, when they are considered in connection with the immediate context and with other portions, the ground for criticism disappears. In its entirety the charge was an impartial and correct exposition of the law applicable to the questions arising upon the evidence. This is all that was required.

Other errors are assigned, but no useful purpose will be served by a discussion of them. Upon full consideration, they have been found to be untenable—some because the exception taken at the trial was not sufficiently specific to present any question to this court, and others because the ruling was manifestly correct.

The judgment is affirmed.