# [WHITWORTH v. WEBB CITY, Appellant.

**Division Two, June 11, 1907.**

1. **SEWER: General Ordinance: Details of Construction.** An ordinance establishing a sewer, which sets out the general course of the sewer, size of pipe and approximate cost thereof, is sufficient to authorize the city to enter into contract for the construction of the sewer, and is not invalid as being insufficiently specific in details of construction; and if such an ordinance is followed by plans and specifications, full and complete in detail, prepared by the city engineer and approved by the city council before any contract is let, and treated and regarded by the council as if they had been authorized by ordinance, and used as the basis of the bids and contracts, they supply the necessary details of construction not specified in the ordinance, and the ordinance and a contract in pursuance thereof are valid.

2. ————: **Location: Divergence: Delegation to Engineer.** Power to locate a sewer in a city of the third class is legislative, and cannot be delegated to the city engineer; but a slight divergence from the line or course of the sewer, between the starting point and terminus designated in the ordinance, in order to avoid a deep cut, is not a location of the sewer on a route different from that indicated by the ordinance.

3. ————: ————: ————: **Estoppel: Acquiescence.** The city is estopped to deny its authority to make the contract by a recital in the contract that the work of constructing the sewer is let to plaintiff in pursuance to a specified ordinance; and its acquiescence and satisfaction with the work are shown by provisions in the contract authorizing the council to revoke the contract if the contractor should fail to comply with the instructions of the engineer or fail in any manner to comply with the specifications contained in the contract, and by no action on its part attempting to annul the contract.

4. ————: **Ultra Vires Contracts.** There is a marked distinction between the acts of cities which are *ultra vires* and acts which are merely irregular. It is within the authority of a city to establish a sewer district, provide for the sewer's construction by contract, and pay for it out of the city revenues.

5. ————: ————: **Construing Statutes.** In the interpretation of such contracts, in a suit against the city for the value of the work done, the statutes are not as strictly construed as in suits on special taxbills or benefit assessments to enforce a lien

against private property for a public improvement. In such case a substantial compliance with the ordinance, contract and specifications is all that is required.

6. ———: Acceptance. Where a sewer was constructed in substantial compliance with the contract, the city cannot refuse to pay for it by arbitrarily refusing to accept it.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray*, Judge.

AFFIRMED.

*George V. Farris, J. J. Nelson, Morris Pritchett* and *A. E. Spencer* for appellant.

(1) The ordinance must specify all the statutory requirements, and the power can only be exercised under such an ordinance. R. S. 1899, secs. 5847, 6759. Public sewers may only be established at such points, to such extent, of such dimensions and under such regulations as may be provided by ordinance. Hence, an ordinance fixing the points at which the sewer is established, its extent, dimensions and regulations is an essential prerequisite. Without an ordinance covering these matters the whole proceeding is void, and plaintiff cannot recover. City to use v. Eddy, 123 Mo. 546; Wheeler v. City, 149 Mo. 36; State v. Butler, 178 Mo. 313; City v. Donohue, 190 Mo. 407. The statute contemplates an ordinance as the basis of the establishing of a public sewer system and the construction of the sewer; and further, an ordinance that by its terms, or by apt reference, is definite and certain as to what sewer is to be built, where it is to be constructed and how, of what material and in what manner. City v. Martin, 95 Mo. App. 28; Heidelberg v. County, 100 Mo. 69; Anderson v. County, 181 Mo. 46. (2) If it be true in this case the city could only proceed by ordinance, plaintiff's action must fail, for he did not build the sewer between the points, or along the route specified

in the ordinance. Anderson v. Ripley County, 181 Mo. 58; City v. Collier, 68 Mo. App. 483; Galbreath v. Newton, 30 Mo. App. 380; People v. Board, 43 N. Y. 227. (3) Where the city was authorized, by ordinance, to establish a public sewer, and contract for construction of such sewer it could not delegate the exercise of the necessary judgment and discretion in such matters to the city engineer or any other person. Smith, Municipal Corporations, p. 549, sec. 564; Matthews v. City, 68 Mo. 115; Neill v. Gates, 152 Mo. 585; Ruggles v. Collier, 43 Mo. 353; City v. Eddy, 123 Mo. 546; Cooley, Constitutional Limitations (4 Ed.), p. 248. (4) Plaintiff, in dealing with the officers of defendant city, was bound to ascertain the authority of these officers, including City Engineer Bell, and to know that these officers were acting within the scope of their lawful powers. Cheeney v. Brookfield, 60 Mo. 53; Wheeler v. City, 149 Mo. 36; Saxton v. St. Joseph, 60 Mo. 153; Thornburg v. School District, 175 Mo. 23.

*A. M. Whitworth, Edward J. White* and *Thomas & Hackney* for respondent.

(1) The courts cannot hold this ordinance void because of the manner in which the counsel exercised its 'legislative discretion. Heman v. Schulte, 166 Mo. 409; Barber Asphalt Paving Co. v. French, 158 Mo. 534; Kansas City v. Trieb, 76 Mo. App. 478. Nor can this general ordinance be held to be illegal because it lacks precision or only loosely complies with the law, since it provides the manner in which the improvements are to be made and the sewers mentioned constructed. Sheehan v. Gleeson, 46 Mo. 100; St. Louis v. Oeters, 36 Mo. 456; St. Joseph v. Owen, 110 Mo. 445; St. Joseph v. Landis, 54 Mo. App. 315; State ex rel. v. St. Louis, 56 Mo. 277; Becker v. Washington, 94 Mo. Mo. 375; Kansas City v. Mastin, 169 Mo. 80; Young v. Kansas City, 27 Mo. App. 101; Galbreath v. Newton,

30 Mo. App. 380; Barber Asphalt Paving Co. v. Ullman, 137 Mo. 543; Ross v. Gates, 183 Mo. 338. (2) The special contract, under which the sewer in controversy was constructed, had all the essentials of a valid municipal ordinance, and after its adoption by the council, was tantamount to a special ordinance governing the construction of the sewer. R. S. 1899, sec. 5832; Tarkio v. Cook, 120 Mo. 1; Aurora Water Co. v. Aurora, 129 Mo. 540; Tipton v. Norman, 72 Mo. 381; St. Louis v. Foster, 52 Mo. 514; Dillon, Mun. Corp., sec. 309. (3) The contract sued on was a valid, legal contract, not inconsistent with the terms of the general ordinance, establishing the sewers to be constructed; it was not a variance from the terms of the general ordinance and did not delegate to the engineer legislative functions that the council could alone exercise. Guild v. Andrews, 137 Fed. 369; Guyer v. Rock Island, 215 Ill. 144; Barber Asphalt Paving Co. v. Garr (Ky.), 73 S. W. 1106; Roth v. Hax, 68 Mo. App. 283; Barber Asphalt Pav. Co. v. Hezel, 155 Mo. 391; Ross v. Gates, 183 Mo. 338; St. Joseph v. Owen, 110 Mo. 445; St. Joseph v. Landis, 54 Mo. App. 315; State ex rel. v. St. Louis, 56 Mo. 277; Mobile v. Shea, 127 Fed. 521; St. Louis v. Oeters, 36 Mo. 456; Akers v. Kolkmeyer, 97 Mo. App. 520; Walker v. Chicago, 202 Ill. 531; Allen v. Melrose (Mass.), 57 N. E. 1060; Bank v. Ridge, 183 Mo. 506. (4) Even if the contract sued on constituted a material variance from the general ordinance authorizing the construction of the sewer and it was not of sufficient formality to be held a special ordinance on the subject, it was nevertheless a valid, subsisting contract for the construction of the sewer, and the work and materials having been done and performed under the terms of such contract and not upon an implied obligation, defendant is liable thereon, though such contract was informal or irregular, after having enjoyed the advantages and benefits of the work and materials furnished.

Water Co. v. Aurora, 129 Mo. 583; Devers v. Howard, 88 Mo. App. 253; State ex rel. v. Milling Co., 156 Mo. 620; Foncannon v. Kirksville, 88 Mo. App. 279; Water Works Co. v. Joplin, 177 Mo. 496; Akers v. Kolkmeyer, 97 Mo. App. 520.

BURGESS, J.—This is an action to recover the sum of $7,692.40, the same being a balance claimed by plaintiff to be due him by defendant for the construction of a public sewer in defendant city, under a general and, what is claimed by plaintiff, a special ordinance, and contract therefor, based upon certain plans and specifications covering the details and manner of construction. The length of the sewer, when completed, was about eleven thousand three hundred feet. Plaintiff recovered judgment for the sum of $7,246.55, from which judgment the defendant, after unavailing motions for new trial and in arrest, appeals.

The petition alleges that on the 12th day of August, 1901, the defendant, as a city of the third class, entered into a contract with him, in writing, for the construction of the sewer, under which the plaintiff agreed to furnish all the labor and materials and complete the sewer, in accordance with the terms and conditions of the contract, and the defendant agreed to pay therefor, according to a fixed schedule of prices, per unit, for all such labor and materials; that the contract was executed in duplicate and filed with the city clerk, as required by law; that the work of construction was to be carried out, in accordance with the specifications adopted by the defendant and under the direction and supervision of the defendant's city engineer, who was given power to make alterations and require additions to said specifications, all additions to be paid for at the same rate as the labor and materials originally provided for; that within the time agreed upon the plaintiff completed the construction of the

sewer, in accordance with the terms and conditions of the contract, under the orders and directions of the defendant's city engineer; that all labor and materials used were fully paid for by the plaintiff and that the sewer was accepted by the defendant. Plaintiff also set out, in his petition, an itemized statement of the amount due at the contract price, for labor and materials furnished, aggregating the sum of $9,692.40; credited the defendant with a payment thereon of two thousand dollars, and alleged a demand and refusal to pay the balance due; alleged that on November 18, 1901, the defendant's city engineer filed his final and supplemental estimate of the amount due the plaintiff, in the aggregate of $9,048, and alleged that said city engineer erroneously estimated only 547 cubic yards of solid rock excavated, whereas, in truth and in fact, plaintiff excavated 611 cubic yards of solid rock, in making excavations for the sewer, and that the city engineer only estimated 4,762 cubic yards of earth and loose rock, whereas, 5,698 cubic yards were excavated under the contract. That on notice from the city engineer, after completion of the sewer, the plaintiff did certain portions thereof over; he repaired and did additional work on the sewer and re-constructed all parts that were objected to by the city engineer; that after the final and supplemental estimate by the city engineer, the defendant, on February 1, 1902, appointed a new city engineer, who attempted to make another estimate, and the inability of such new city engineer to make a proper estimate and the improper conduct on the part of such new city engineer, in the making of such new estimates, are also alleged.

The answer admits the incorporation of defendant and the payment of two thousand dollars on the contract, and denies all other allegations of the petition.

As an affirmative defense it is alleged that the sewer mentioned in the petition was a public sewer,

such as under the laws of Missouri could only be established at such points, to such extent, of such dimensions, and under such regulations, as were provided by ordinance of defendant city. That the city never passed any ordinance establishing such sewer, and fixing and defining the points where the same was established, the extent and dimensions thereof, and the regulations under which the same should be constructed, and therefore such contract as defendant's officers may have attempted to make with plaintiff concerning said sewer was and is *ultra vires* and void.

That the only ordinance ever passed by defendant's council was Ordinance No. 407, passed October 15, 1900, providing that a public outfall sewer system is hereby established, to be known as "The Vine Street Sewer," "The Church Street Sewer" and the "Fourth Street Sewer." "That the only provisions in said ordinance concerning said Fourth Street Sewer are:

"The Fourth Street Sewer shall begin in the center of Fourth street, at the junction of Webb street; thence west on Fourth street to Roan street; thence south to ravine; then following the natural watercourse of said ravine westward, crossing the Electric railroad at Barrett Heights Addition; thence in a more northerly direction passing west of the Webb City College, and terminating about forty rods north of the Mineral Ridge road; the Fourth Street Sewer shall be constructed of pipe ten and twelve inches in diameter, laid at an average depth of four feet." That said ordinance is defective and insufficient in that it fails to definitely locate the points at which said sewer is to be constructed, the extent and dimensions thereof, the material and quality thereof, out of which the same is to be constructed, and fails to provide any regulation for the construction thereof, as to the method or time of construction, the kind and quality of material to be used or otherwise; by reason whereof any contract defend-

ant's officers may have attempted to make with plaintiff concerning said sewer was and is *ultra vires* and void.

That on August 12, 1901, the mayor and city clerk of defendant undertook to enter into a contract with plaintiff for the construction of a public sewer in said Fourth Street Sewer District, but said contract, as above stated, was unauthorized and void. That whatever work defendant did under said pretended contract was not done between the points and along the route indicated in and by said Ordinance No. 407, but was done along a different route and between different points.

The answer also charges that its city engineer Bell's estimate of $9,049.50, and the claim of plaintiff as submitted to defendant's counsel for $9,995.25, were fraudulently made by said parties with intent thereby to cheat and defraud defendant. That the work done and material used by plaintiff under said pretended contract amounted to only $4,161.08, so that if said contract, or any part of it, be held legal and binding on defendant, plaintiff is only entitled to receive, for so much thereof as is so legal and binding, for the quantities and at the price last above stated. That when plaintiff claimed to have finished the work, defendant's then city engineer, Atwater, made a correct final estimate of $4,161.08 and defendant refused to receive the work under the estimates of Bell or plaintiff.

That plaintiff's claim was never properly presented to defendant in writing as required by law, with a full amount of the items, verified by the oath of the claimant, or his agent, that the same were correct, reasonable and just.

Then follows a claim for damages for failure to complete sewer within time required by the pretended contract, if same be held valid.

The reply is a general denial, with statement of

matters directed solely to defendant's claim for damages.

The facts are about as follows:

On October 15, 1900, the council of defendant passed an ordinance, No. 407, establishing a public outfall sewer system in the defendant city, designating the size of pipe and the course of the sewer, and limiting the cost thereof, which ordinance is as follows:

"Be it ordained by the council of the city of Webb City, Mo., as follows:

"Section 1. That a public outfall sewer system is hereby established, and the same shall be designated and known as 'The Vine Street Sewer,' 'The Church Street Sewer,' and 'The Fourth Street Sewer.'

"Sec. 2. The following shall be the general course, size of pipe used, and the approximate cost of the aforesaid sewers mentioned in section one:  .  .  .  The Fourth street sewer shall begin in the center of Fourth street, at the junction of Webb street, thence west on Fourth street to Roan street, thence south to ravine, then following the natural watercourse of said ravine westward, crossing the electric railroad at Barrett Heights Addition, thence in a more northerly direction passing west of the Webb City College and terminating about forty rods north of the Mineral Ridge Road; the Fourth street sewer shall be constructed of pipe ten and twelve inches in diameter, laid at an average depth of four feet, and shall cost approximately $7,346.62.

"Sec. 3. This ordinance shall be in full force and effect from and after its passage, adoption and approval."

On August 5, 1901, plaintiff made bid for constructing the sewer in question at the price of $3,912,80, which bid was accepted by resolution on the same day.

After the written offer and proposal of the plaintiff was accepted by the defendant's council, a special con-

tract covering the specific terms and conditions under which the sewer was agreed to be constructed and paid for, was regularly entered into by the defendant's council on August 12, 1901, or almost a year after the passage of the general ordinance, establishing the necessity for the sewers, and the plans, map, profile and specifications, as part of this latter contract, showed the location and construction of the sewer in detail, at the exact location where it was later constructed, and the map or profile, showing such location, was filed with the city clerk along with the plans and specifications constituting a part of this special contract, and was adopted and recognized by the council and its sewer committee, as a part of this special contract.

This contract, so adopted by the defendant's council, after specifying the general power of the council, under the general ordinance No. 407 and the "authority vested in the said council by charter and general ordinance," proceeds to let, to the plaintiff, the work of constructing this sewer, on the terms and conditions, and at the place specified in the plans, map, specifications and profile filed as a part thereof. The contract provided that the work should all be done in a workmanlike manner "and in strict conformity with the plans of such work, on file in the office of the city engineer of the city of Webb City; in strict obedience to the directions, which may, from time to time, be given by the said city engineer . . . and in strict accordance with the following plans and specifications, which are hereto attached and made a part of this contract." At this time, as a part of such plans, there was a map or profile, showing the exact location of such sewer, filed in the office of the city clerk and used by the council and the different bidders on the work, which was adopted, as a part of this contract, governing the construction of this sewer.

Under the contract, the plaintiff was required to

commence work at such points as the defendant's city engineer should direct and to conform to his directions and instructions as to the mode of doing the work; the city engineer was given power to discharge any of the plaintiff's employees; all work implied by the contract was to be done without extra charge; any extra work directed by the city engineer was agreed to be performed, and "to prevent disputes and litigation," the city engineer was given full power to determine the amount or quality of the several kinds of work "and his estimates and decisions" were made final; any citizen and taxpayer, complaining to the city engineer, had a right, under this contract at the expense of the plaintiff, to a commission, to inquire into the quality or standard of his work; the city engineer was given authority "to make alterations in the line, grade, plan, form or dimensions of the work contemplated, or any part thereof, either before or after the commencement of the work to be done," and such alterations were stipulated to furnish no basis for damages or loss of anticipated profits, but the increased labor or materials, included in any such alterations, if made, were to be paid for, according to the amount furnished, at the stipulated price, per unit, therefor. In the contract the right was reserved to the council, on notice, at any time, to order the work thereunder stopped and a failure to comply with the instructions of the defendant's city engineer, gave the defendant's council, at any time, a right to cancel the contract. The contract set forth a list of prices, per unit, for labor and materials furnished by the plaintiff; provided for the payment of the amounts due under the contract, on the estimate of the city engineer, less 15 per cent, to be retained until final completion of the work, and it gave "the city" the right to refuse payment, "should the measurement and the computation" be found or known to be improperly made.

Accompanying the contract are the plans, specifications and details, governing the manner of making the excavations; protection against accidents; the repairing and restoring of the streets; the laying of pipes and cementing and joining of "t's" and joints, artificial foundations, rock cuts, handholds, lamp holes, manholes, flush tanks, brick masonry, cement work, mortar, concrete, stone masonry and all the general and special details of the work.

The final estimate and acceptance of the sewer by the defendant's city engineer, under whose orders the work was done, was handed to the defendant's council, on November 11, 1901, the additional claim and demand of the plaintiff, for work and materials performed and furnished, but not included in the city engineer's final estimate, was presented and filed, at the same time and, on February 15, 1902, the new city engineer, Atwater, recommended the acceptance of the entire sewer and payment therefor, upon the basis of his later estimate and measurements.

T. B. Hudson, the foreman of the plaintiff, in the construction of the sewer, testified that the defendant's city engineer set the grade stakes, in setting out the line of the sewer; he gave the grade and location at each point and it was constructed exactly in accordance with the grade and location given.

J. D. Goswick testified that he worked for plaintiff on the construction of the sewer; that the city engineer, Bell, gave the grades and location of the sewer, and that he set the grades stakes and the ditch was dug according to his directions.

Samuel Bell, city engineer in Webb City, from 1898 until 1902, testified that on account of the location of the ground, the sewers in Webb City were divided into three parts, or districts; that what was known as the Fourth Street sewer, was constructed by the plaintiff, under his supervision and direction; that

before advertising or accepting bids for this sewer, there were prepared by him plans and specifications approved by the council; the proposed bidders all had access to these plans; the contracts were all on the basis of one yard of rock, concrete, etc., and if they didn't find any, they didn't get anything for it; the amount due the plaintiff, as reported to the council, was correct; he saw the work every day and had exclusive charge of it as city engineer, and made the measurements himself, to determine the amount of his estimate; there was a difference between the plaintiff's foreman and the witness as to the amount of solid rock excavated by the plaintiff, but the witness said he made careful estimates of the places where there was no rock and where there was rock, that he considered solid rock.

Counsel for the defendant objected to going into the basis of the engineer's estimate, as follows:

"Mr. Spencer: In the absence of a showing of fraud, in a contract like this, . . . his classification is final."

The city engineer, continuing, further testified that the sewer was constructed according to the red line on the plat or map filed by him with the city clerk; that the sewer was not placed on Fourth street, between Webb and Roan streets, because there was a high hill in between those streets, on Fourth street, and that had to be avoided by coming around where the red line on the plat located the sewer; at the place where it was located the cut was only four or five feet, but had it been located on Fourth street, between Webb and Roan street, it would have been fifteen feet through the high hill; that the expense was lessened by building the sewer on the line shown on the plat or map; that the sewer was extended east, to the alley east of Thom street, under the directions of Mr. Shaffer, chairman of the sewer committee, with the

concurrence and consent of the other members of the committee; that the plat or map was made by the witness, as city engineer, prior to the letting of the contract, and that this map was used before the council at the time of the letting of the contract therefor. That there was a committee of the council appointed to go over the line of the sewer and procure the right of way, consisting of two members of the council and Mr. Joe Stewart; that they went over the line together; that in the construction of the sewer the entire length he marked out on the ground the location of the sewer, and Mr. Whitworth constructed it at the place designated; that he made an estimate just before the letting of the contract, after the profile map was made; the map was shown the council and then filed with the city clerk as the engineer's profile of the work.

That the map was made long before any work was done, or any contract was let for the sewer; that in making the map and locating the sewer he followed the general course of the sewer, as established in the general ordinance; that after taking the elevations he found that he had a fall of one hundred feet, and that it wasn't a question of following a direct line, or the line mentioned in the general ordinance, but he followed the general course in his profile and located the sewer where it was best for the city, in a southwesterly direction from Webb street, and then in a westerly direction until the branch was intersected; that this course was made necessary on account of the hill in Fourth street.

The witness also testified that the location of the sewer at the place shown on his map or profile was adopted long before the contract was let to the plaintiff, and that the city council had adopted this location before the bidding was done. The sewer was constructed at the place he directed; where he staked it

out, and, as located and constructed, it is a complete sewer and sufficient to give good service to the city. That if the sewer had been located on Fourth street it would have had a cut of from twenty-five to thirty feet deep for the people to connect with it, whereas it is only four or five feet deep where it is, and, as now constructed, the sewer is a part of a complete sewer system for the defendant city.

The plaintiff, Whitworth, testified that the sewer was constructed by him in strict accord with the profile and directions given him by city engineer Bell; that when the sewer was finally finished Mr. Wertz, Mr. West, Mr. Potts and City Counsellor Pritchett all went out to inspect it; there were no objections raised by any of this committee and the work was then all finally completed and ended. He also testified that he was never asked or requested by Mr. Bell, city engineer, to build the sewer west on Fourth street between Webb· and Roan streets, nor was there any line for a sewer marked out for him to build on there; that he followed the city engineer's instructions and directions, went by his grade stakes and that the officers and committees of the city council knew where he was building the sewer and that they never· asked him to change it or move it to Fourth, nor objected to the construction on the line shown on the map. That on notice from Engineer  Bell he reconstructed the concrete work south at the Frisco grade crossing, and then the work was accepted as finished and complete. That after the new city engineer, Atwater, was appointed he was asked by him to raise some pipe a little and he did that and everything else required of him, and then the new city engineer, Atwater, told him the sewer was absolutely correct with those repairs made.

For the defendant, W. D. Wertz testified that he was the mayor of Webb City and was a member of

the council when the sewer was built; that the sewer followed the general course of the branch, and to lay it on Fourth street would have necessitated á cut of twenty feet or more in the street; it would have been a very much more expensive location than that adopted by the council; that for this reason the council authorized the letting of the contract and the construction of the sewer at the place shown on the profile map and plat prepared by the city engineer; he was a member of the sewer committee; understood the place the sewer was being constructed and the place specified in the map and contract and never asked the sewer built on Fourth street, nor did any member of the council; Shaffer was chairman of the sewer committee and looked after it most of the time; after the sewer was completed they all went over it and there appeared to be nothing wrong with it, and that night Mr. Whitworth presented his bill for allowance.

Mr. Atwater, the new city engineer, testified that he had measured up the sewer after it was finally completed, and that it measured 11,431 feet; that he had the plaintiff take up some of the sags and line up the sewer pipe; that he had seen the plaintiff's claim and estimate on file in the city clerk's office; that on the 10th of December he was along the line of the sewer and saw the plaintiff reconstructing the concrete work at the Frisco grade crossing; that at the time of the trial the sewer was a complete sewer on a grade that worked all right, and it was only a question about paying for it now.

Section 3847, Revised Statutes 1899, provides that: "The council shall have power to cause a general sewer system to be established, which shall be composed of three classes of sewers, to-wit, public, district and private sewers. Public sewers shall be established along' the principal courses of drainage, at such points, to

such extent, of such dimensions and under such regulations as may be provided by ordinance.''

That the city had the power to pass an ordinance establishing public, district and private sewers, is not doubted; but defendant contends that the ordinance in question is defective and invalid, and not a sufficient ordinance to authorize the defendant to contract for the construction of a sewer, because not in compliance with the requirements of the statutes of the State comprising the charter of cities of this class; that it is not sufficient as to the establishment of the points or the extent of dimensions of the proposed sewer, and does not provide, as required by statute, any regulations concerning the construction thereof; that it is too indefinite and uncertain to be the basis of any contract for construction of sewer work; that it fails to provide or designate the character or quality of the pipe out of which the sewer is to be constructed, or how much shall be ten and how much twelve inches in diameter, and fails to provide any regulations whatever for the construction of the sewer.

All sewers in incorporated cities can only be constructed in pursuance of an ordinance passed by the counsel of such city for that purpose. [City to use v. Eddy, 123 Mo. 546; Wheeler v. City, 149 Mo. 36.]

It is evident that it was not the purpose of the ordinance to make the course of the sewer any more definite than it does. It designates the point of beginning and points out the direction it shall take to a ravine; then to follow the natural water course of said ravine westward, ''crossing the electric railroad at Barrett Heights Addition; thence in a more northerly direction passing west of the Webb City College and terminating about 40 rods north of the Mineral Ridge Road.'' It further provides that the sewer shall be constructed of pipe ten and twelve inches in diameter,

laid at an average depth of four feet, and shall cost approximately $7,346.62.

We are unable to agree with the defendant that the ordinance is not sufficient to authorize defendant to enter into the contract sued upon for the construction of the sewer, or that it does not sufficiently establish the points or the extent or dimensions of the sewer, or that it is too indefinite and uncertain, or otherwise invalid. In passing upon a similar ordinance in Sheehan v. Gleeson, 46 Mo. 100, the court said: "But defendant's counsel criticise it as not being sufficiently specific, and insist that too much discretion is still left to the engineer. We should first premise that, as a matter of necessity, some discretion must be left to the executive officers. It would be difficult for ordinances to specify every particular of a work; but they must be more or less general, and must take many things for granted in the history, geography and topography of the place, and in the arts called into requisition by the improvements ordered. And we should further premise that an ordinance may lack desirable precision, and still may so provide for the manner in which the improvement shall be made, and be such a compliance with the law, although a loose one, that the courts would not be authorized to invalidate the action of the city officers under it. It is not every irregularity or omission that goes to the substance of a proceeding."

Plaintiff contends that the ordinance is only declaratory of the legislative necessity for the establishment of the sewers therein mentioned, and purports to establish the *general course, size of pipe, and approximate cost* thereof, and that all of the prerequisites asserted by defendant to be necessary, that is to say, the details of the location and construction of the sewers, were regulated and governed by the later special contract and ordinance, and the map, profile, plans

and specifications which were adopted by the city coun-
cil were in the office of the city clerk and city engineer
at the time the contract for the work was let to plain-
tiff.

The records of the city council showed that at a
meeting of said council, held on the 15th day of July,
1901, on motion of Wertz, a member of said city coun-
cil, seconded by Shaffer, the city engineer was ordered
to advertise for bids on the construction of the Fourth
street sewer, after the amount of damages and costs
on securing the right of way had been paid; that on
August 5, 1901, at another meeting of said council, bids
for the construction of the said sewer were opened, and
John T. Whitworth's bid of $3,912.80 being the lowest,
he was awarded the contract for building the sewer,
on motion of Fisher, seconded by Ashcroft, all present
voting ''Yes,'' and the city counselor was instructed
to prepare contract and bond for acceptance of the
council; that at a meeting of said council, held August
12, a contract with J. T. Whitworth for the construc-
tion of the Fourth Street sewer, with bond in the sum
of two thousand dollars, signed by said J. T. Whit-
worth, with A. M. Whitworth and A. G. Carter as
sureties, were read and, on motion of Ashcroft, sec-
onded by Covert, the same were accepted, all present
voting ''Yes.''

While there was but the one ordinance, the plans
and specifications for the sewer were prepared and filed
by the city engineer in his office, in pursuance of the
directions of the city council, prior to the time the con-
tract for the construction of the sewer was let, and, be-
ing full and complete in every detail as regards the
construction of the sewer, were treated and regarded
by the council just as if the same had been authorized
by ordinance, and must be regarded as supplying the
necessary details of the construction of the sewer not

specified in the ordinance, and as in effect taking the place of the ordinance in these respects.

When the ordinance is considered in connection with the plans and specifications, as we think it should be, the sewer was built within the terms thereof. Defendant, however, insists that the city could not delegate the exercise of the necessary judgment and discretion for the location of the sewer to the city engineer. It is well settled that legislative powers cannot be delegated (Matthews v. City, 68 Mo. 115; Neill v. Gates, 152 Mo. 585; Ruggles v. Collier, 43 Mo. 353; Smith on Municipal Corporations, sec. 564; Cooley on Constitutional Limitations (4 Ed.), p. 248); and that the power to locate sewers in cities of the third class is of that character is clear, because express power so to do is vested in such cities by section 5847, Revised Statutes 1899.

The contract sued upon is in all material respects in compliance with the plans and specifications, and, therefore, not at variance with the terms of the general ordinance, and did not, we think, delegate to the city engineer legislative functions that the city council alone could exercise. The general course of the sewer, its termination, and the size of the pipe to be used in its construction are designated by the ordinance; and the slight divergence from the line or course of the sewer, between its starting point and terminus, was not in fact a location of the sewer upon a route different from that indicated by the ordinance, and resulted in no injury to the defendant.

In State ex rel. Cavender v. St. Louis, 56 Mo. 277, it is held that while it was the duty of the city council, under its charter, to establish the sewer districts by ordinance, it was not necessary that it pass another and special ordinance to determine the particular route, or dimensions, or material, or laterals of the sewer within the district, but that these de-

tails might be intrusted to the engineer to be regulated by contract. [See, also, Guild v. Andrews, 137 Fed. 369; St. Joseph to use v. Owen, 110 Mo. 445; Roth v. Hax, 68 Mo.-App. 283; Guyer v. City of Rock Island, 215 Ill. 144.]

Contracts intrusting to the city engineer the details of the supervision and direction of the construction of sewers and the manner of the carrying out and the quality of the materials and the engineering features of the construction have been held not to delegate legislative powers to such officer. [Mobile v. Shea, 127 Fed. 521; State ex rel. v. St. Louis, supra; St. Joseph to use v. Owen, supra; St. Joseph to use v. Landis, 54 Mo. App. 315; Allen v. Inh. Melrose (Mass.), 67 N. E. 1060.]

In Mobile v. Shea, supra, a written contract was entered into between a city and a contractor for the construction of a system of sewerage for the city, in accordance with plans and specifications annexed, and at prices for work and materials shown in a schedule annexed, although the right was reserved to change the amounts from those shown in the plans and specifications. It was further provided that all estimates of work done and materials furnished should be made by the city engineer, and all differences and disputes in relation thereto, or any matter or thing arising in reference to the construction of said sewerage system, should be referred to him, and his decision thereon should be conclusive, final and binding on both parties. It was held that the work done and materials furnished by the contractor in constructing the sewers, although the plans and specifications were, in some instances, departed from, were done and furnished under the contract, and at the prices therein fixed, and that as to amount of same and the other matters involved the estimate of the city engineer was final.

The contract in this case recites, ''Whereas the

council of the city of Webb City, under the provisions of ordinance No. 407, approved October 15, 1900, and by authority vested in the said council by charter and general ordinances of the city of Webb City, did let unto the said J. L. Whitworth the work of constructing sewers in the city of Webb City, as by the above-mentioned ordinance specified." It also provides that if the contractor shall neglect to comply with the instruction of the engineer relative thereto, or shall fail in any manner to comply with the specifications or stipulations contained in the contract, the city council shall have the right, with the consent of the mayor, to annul and cancel the contract and reject the work or any part thereof. Yet the work was permitted to go on, with full knowledge by the city authorities of the manner in which it was being done, without protest on their part; at least, without taking any steps to cancel or annul the contract. Not only this, but the plat and profile showing the location and course of the sewer as constructed (which the evidence of the city engineer Bell showed was filed and made a part of the special contract before its adoption by the council), taken in connection with the verbal evidence, show that the variance in the location from the Fourth street line mentioned in the ordinance was for the advantage and benefit of the city, and this seems to be the reason why the council and its committees made the change, and sufficiently explains the reason for the approval of the sewer by the city engineers Bell and Atwater, both of whom testified that the sewer as constructed is a complete and serviceable sewer. The recital in the contract quoted estops defendant from denying its authority to make the contract, and its acquiescence in the manner of the sewer's construction and the work done tends to show that the work was being done satisfactorily to the defendant.

There is a marked distinction, as indicated by the

authorities, between the acts of municipalities which are *ultra vires* and acts which are merely irregular. In this case the acts of the city authorities were within the scope of their power. The contract was in writing, as required by statute, and the plans, profile and specifications were all filed with the city clerk, and used and adopted by the council, and also used by the committee and its authorized officers before and after the construction of the sewer, and there was no departure therefrom. [Beach on Pub. Corp., secs. 693-700.]

All cases relied upon by defendant were suits between the city and a third party to enforce a lien for improvements, under statutes which, because of their special character, are strictly construed; or actions against the city upon a contract which was invalid. In the case at bar the contract sued on was between parties capable of contracting with respect to the subject-matter thereof, and the same rule does not apply as that which obtains in cases for the enforcement of a special lien against property for street improvements. In this class of cases a substantial compliance with the ordinance, contract and specifications, is all that is required.

It has been held that material changes in a contract for city work made by a city engineer, in whom was vested, as in this case, the power to make changes, were no barrier to the contractor's right to recover for the work done. [Kingsley v. Brooklyn, 78 N. Y. 200; Mulholland v. New York, 113 N. Y. 631; Messenger v. Buffalo, 21 N. Y. 196.]

Water Co. v. City of Aurora, 129 Mo. 540, was an action by plaintiff, as assignee, to recover of the defendant city hydrant rentals claimed to be due it in consequence and by the performance of a contract made between plaintiff's assignor and defendant, and which consisted of certain ordinances passed by defendant, adopted by the tax-payers, and accepted by plain-

tiff or its assignor. Defendant denied the validity of the contract, on constitutional and other grounds. SHERWOOD, J., speaking for the court, said:

"The city had it in its power to ratify what had previously been done, inasmuch as ordinance 35 passed, its adoption by the requisite vote, and the acceptance by Guiney, constituted a completed contract, one *infra vires* the municipality. On this point the learned author already cited observes: 'A municipal corporation may ratify the unauthorized acts and contracts of its agents or officers, which are within the scope of the corporate powers, but not otherwise. Ratification may frequently be inferred from acquiescence after knowledge of all material facts, or from acts inconsistent with any other supposition. The same principle is applicable to corporations as to individuals.' [1 Dillon on Mun. Corp. (4 Ed.), sec. 463.]

"Now here the only ratification would be with regard to the simple acceptance of the work, work done under full sanction of legitimate authority. 'Strong evidence of the assent of the corporation is not required; but such assent must be shown.' [Dillon on Mun. Corp., sec. 464.]

"We incline to the opinion that there has been a sufficient ratification of the report of the waterworks committee shown, and acceptance of the works by the use of the water for such a length of time, without objection, and by payment of the first installment due for hydrant rentals, amounting to nearly eight hundred dollars. Having received the benefit of a contract fairly and lawfully made, the city should not be permitted to shirk the burden which goes hand in hand with the benefit received, by refusing to technically accept what it is. perfectly willing to actually use. Such conduct will not be tolerated in a court of justice, and we shall treat the works as accepted by the city."

The issues as to whether plaintiff had complied

with the terms of the contract, as to any fraud or conspiracy between plaintiff and the defendant's engineer, the question of damages due the defendant for delay in completing the sewer, and the amount due plaintiff under the contract, were all submitted to the jury by instructions which are not criticized by defendant, and the finding was for plaintiff upon all of the issues, and the verdict is conclusive upon each and all of them.

The sewer having been constructed in substantial compliance with the terms of the contract, it was defendant's duty, upon notification, to receive the same, and it cannot refuse to pay therefor although arbitrarily refusing to formally accept it. As was said by Mr. Justice FIELD in Gas Co. v. San Francisco, 9 Cal. l. c. 469, "The obligation to do justice rests equally upon it [the corporation] as upon an individual. It cannot avail itself of the property of labor of a party, and screen itself from responsibility under the plea that it never passed an ordinance on the subject."

The judgment is for the right party, and no error, in our opinion, having been committed by the trial court against the appellant materially affecting the action, we are prohibited by statute (sec. 865, R. S. 1899) from reversing the judgment.

The judgment is affirmed.

All concur.